Luetta K. LISKA, Plaintiff and Appellee,

v.

Michael A. LISKA, Defendant and Appellant.

No. 940180–CA.

Court of Appeals of Utah.

Aug. 31, 1995.

---

James A. McIntyre and Margaret K. Gentles, Salt Lake City, for appellant.

Luetta K. Liska, Loveland, CO, appellee pro se.

Before ORME, GREENWOOD and JACKSON, JJ.

ORME, Presiding Judge:

Michael Liska appeals the district court's order staying further proceedings in Utah and sustaining the commissioner's recommendation to defer jurisdiction to Colorado to rule on Luetta Liska's petition to modify their divorce decree. Having determined that "[t]he facts and legal arguments are adequately presented in the brief[ ] and record and the decisional process would not be significantly aided by oral argument," Utah R.App.P. 29(a)(3), we affirm.

## FACTS

Prior to January 1989, Luetta and Michael Liska resided in Salt Lake County as husband and wife. On January 26, 1989, Luetta filed for divorce in Utah's Third District

Court. On August 18, 1989, Luetta moved with the parties' two children to Colorado. The court entered its final decree of divorce on October 30, 1990. The court awarded Luetta custody of the two children and granted Michael visitation rights subject to certain conditions.

According to Michael's affidavit, he began experiencing difficulty exercising his visitation in November 1990. In June 1992, Luetta filed an action in Colorado seeking an emergency order preventing Michael from exercising his visitation. In response to Luetta's request, the Colorado court temporarily terminated Michael's visitation and ordered both parties to participate in a child custody evaluation.

On September 4, 1992, after holding an evidentiary hearing, the Colorado court determined that it properly exercised jurisdiction over the parties pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA) despite Michael's claim that Colorado was an inconvenient forum. The court went on to dissolve the emergency order and reinstate Michael's visitation rights pursuant to a specific, but temporary, visitation schedule. The court anticipated that by January 1, 1993, it would receive sufficient input from the parties and the child custody evaluator to formulate a visitation schedule for 1993 and beyond.

After the child custody evaluation was completed, Luetta filed a second motion for an emergency order requesting that the Colorado court suspend Michael's visitation, scheduled to take place over the 1992 Thanksgiving and Christmas holidays. Consistent with the evaluator's recommendation accompanying the order, on November 24, 1992, the court suspended Michael's holiday visitation rights until further order of the court. On December 21, 1992, the court granted Michael limited visitation over the Christmas holiday.

Subsequently, on March 18, 1993, Michael initiated an order to show cause to enforce his visitation rights in the Third District Court of Utah. The Utah court scheduled a hearing for April 9, 1993, to address Michael's claims. However, prior to the hearing, Luetta informed the Utah court that she would not be appearing as the Colorado court had assumed jurisdiction over the parties.

Having been made aware that Luetta had instituted proceedings in Colorado, the commissioner stayed the proceedings related to Michael's order to show cause and indicated that she intended to confer with the Colorado court to discuss the jurisdictional question. On May 11, 1993, the commissioner, "[b]ased upon a review of the pleadings ... and conference with the Colorado Court," recommended deferring Utah's jurisdiction over the custody and visitation issues in favor of Colorado.

On May 24, 1993, Michael objected to the commissioner's recommendation. Based on Michael's objection, the trial court stayed the commissioner's recommendation pending further order of the court, then referred the case back to the commissioner for findings of fact in support of her recommendation to decline jurisdiction. On December 14, 1993, the commissioner entered findings of fact supporting her recommendation. Over Michael's objection, the trial court adopted the commissioner's recommendation on February 7, 1994, and stayed all further Utah proceedings pending resolution by the Colorado court. The trial court certified its order as a final judgment pursuant to Utah Rule of Civil Procedure 54(b).

Michael appeals the trial court's order, arguing that jurisdiction over the case should properly remain in the Utah courts under the requirements of the UCCJA. Specifically, he argues that the procedure employed by the commissioner violated the notice provisions of the UCCJA and denied him his constitutional rights of due process and access to open courts. He also argues that the commissioner's recommendation was not supported by the evidence and that the trial court erred by sustaining this recommendation without conducting a de novo review.

## STANDARD OF REVIEW

■ Michael challenges the procedures the trial court employed in declining to exercise its continuing jurisdiction over the case. Since this claim presents a question of law, we review it under a correction of error

standard, giving no particular deference to the trial court's determination. *See Ames v. Maas,* 846 P.2d 468, 471 (Utah App.1993); *Holm v. Smilowitz,* 840 P.2d 157, 160 (Utah App.1992).

## JURISDICTION UNDER THE UCCJA

■ The UCCJA, adopted by both Utah and Colorado,[1] recognizes that two states may have an adequate jurisdictional basis over a child custody case, but only one may exercise it. "Under the UCCJA and relevant case law, concurrent jurisdiction exists" when two or more states satisfy the jurisdictional criteria established in the UCCJA. *Holm v. Smilowitz,* 840 P.2d 157, 161 (Utah App. 1992).

■ In the case at bar, Colorado has jurisdiction because the children and at least one parent, their mother, have a significant connection with Colorado and there is substantial evidence in Colorado pertaining to the children's care, protection, education, and personal relationships. *See* Utah Code Ann. § 78–45c–3(1)(b) (1992). Likewise, jurisdiction remains in Utah, the state in which the divorce decree originated, because Michael continues to reside in Utah and has visitation contact with his children. *See id.* § 78–45c–3(1)(b)(i), –14(1); Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws,* 22 Vand.L.Rev. 1207, 1237 (1969) (quoted in *State ex rel. D.S.K. v. Kasper,* 792 P.2d 118, 124 (Utah App.1990)). Such concurrent jurisdiction, however, is not

co-equal. The continuing jurisdiction of the court in which the decree originated is intended to remain exclusive, even if other states have come to satisfy one or more of the criteria in section 3 of the UCCJA, unless the decree state determines not to exercise it. Thus, Utah's jurisdiction is primary.

> Other states do not have jurisdiction to modify the decree. They must respect and defer to the prior state's continuing jurisdiction.
>
> . . . .
>
> Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.

*Crump v. Crump,* 821 P.2d 1172, 1177 (Utah App.1991) (quoting Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA,* 14 Fam. L.Q. 203, 214–15 (1981)) (emphasis omitted), *cert. granted,* 843 P.2d 516 (Utah 1992).[2]

Although the Colorado court satisfies the criteria for jurisdiction under the UCCJA, this in itself does not mean it can exercise jurisdiction. *See supra* note 2 and accompanying text. Even though the jurisdictional

---

**1.** "All fifty states and the District of Columbia have adopted the UCCJA." *State ex rel. D.S.K. v. Kasper,* 792 P.2d 118, 123 n. 4 (Utah App.1990).

**2.** *See also Kasper,* 792 P.2d at 124; *Rawlings v. Weiner,* 752 P.2d 1327, 1330–31 (Utah App.) (Bench, J., concurring), *cert. denied,* 765 P.2d 1278 (Utah 1988). "As long as the decree state retains jurisdiction there is no concurrent jurisdiction to modify a decree under the UCCJA.... [J]urisdiction remains in the decree state as long as one parent continues to reside in the original state and maintains some contact with the child...." *Kasper,* 792 P.2d at 124–25 (citations omitted). *Accord Crump,* 821 P.2d at 1177.

A typical example is the case of the couple who are divorced in state A, their matrimonial home state, and whose children are awarded to the wife, subject to visitation rights of the husband. Wife and children move to state B,

with or without permission of the court to remove the children. *State A has continuing jurisdiction and the courts in state B may not hear the wife's petition to make her the sole custodian, eliminate visitation rights, or make any other modification of the decree, even though state B has in the meantime become the "home state" under section 3. The jurisdiction of state A continues and is exclusive as long as the husband lives in state A unless he loses contact with the children, for example, by not using his visitation privileges for three years.* Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws,* 22 Vand.L.Rev. 1207, 1237 (1969) (emphasis added) (quoted in *Kasper,* 792 P.2d at 124). *See also Rawlings,* 752 P.2d at 1331 (Bench, J., concurring).

requirements of the UCCJA had been met, before exercising jurisdiction the Colorado court should have examined the Colorado provisions equivalent to sections 78–45c–6, –7, and –14 to determine whether it could exercise such jurisdiction. Under section 14, Colorado cannot set about to modify a custody decree that originated in Utah unless it appears to the Colorado court that Utah "does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with [the UCCJA] *or has declined to assume jurisdiction[.]*" Utah Code Ann. § 78–45c–14(1)(a) (1992) (emphasis added).[3]

Michael concedes that the commissioner had statutory authority to "communicate with [the Colorado] court . . . and exchange information pertinent to the assumption of jurisdiction by either court." *Id.* § 78–45c–7. Michael also recognizes that the Utah court may choose to decline to exercise its jurisdiction, stay its proceedings, and defer to the jurisdiction of the Colorado court.[4] Howev-

3. In the instant case, until Utah declined to exercise its jurisdiction, the Colorado court was without power to unilaterally assume jurisdiction over this case, unless it did so on an emergency basis. *Kasper,* 792 P.2d at 126–27. On September 29, 1992, the Colorado court determined "that any emergency which may have existed . . . no longer exists, and, therefore, the emergency orders of this Court . . . are hereby dissolved." Because the Colorado court deemed protective measures to ensure the immediate needs and welfare of the children unnecessary, it jumped the gun by considering modification of the visitation arrangement prior to the Utah court's deferral of jurisdiction. *Id.* at 126–27. Instead, the Colorado court, when presented with the modification petition, should have refrained from all action except narrowly focused emergency measures designed to protect the children from imminent harm until it had initiated contact with Utah, the decree state, and discovered whether Utah was willing to relinquish its jurisdiction. *Id. See Brock v. District Court,* 620 P.2d 11, 14–15 (Colo.1980).

Obviously, the propriety of the Colorado court's actions is not before us. And despite its premature action, Colorado's assumption of jurisdiction over this case was ultimately legitimized when, following consultation initiated by the Utah court, Utah declined to exercise its jurisdiction. In simplest terms, that consultation *should have occurred at the outset of the Colorado proceeding*—and it should have been initiated by the Colorado court.

4. The applicable statutory provision provides:

(1) A court which has jurisdiction under this act to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

(2) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(a) if another state is or recently was the child's home state;

(b) if another state has a closer connection with the child and his family or with the child and one or more of the contestants;

(c) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(d) if the parties have agreed on another forum which is no less appropriate; and

(e) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in Section 78–45c–1.

(4) Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

(5) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.

(6) The court may decline to exercise its jurisdiction under this act if a custody determination is incidental to an action for divorce or another proceeding while retaining jurisdiction over the divorce or other proceeding.

(7) If it appears to the court that it is clearly an inappropriate forum it may require the party who commenced the proceedings to pay, in addition to the costs of the proceedings in this state, necessary travel and other expenses, including attorney's fees, incurred by other parties or their witnesses. Payment is to be made to the clerk of the court for remittance to the proper party.

(8) Upon dismissal or stay of proceedings under this section the court shall inform the court found to be the more appropriate forum of this fact, or if the court which would have

er, Michael challenges the procedures employed by the Utah court in taking the aforementioned course of action. Specifically, Michael contends that the commissioner erred by failing to make a record of her communication with the Colorado court and not providing the parties an opportunity to be present during the communication.

## COURTS OF RECORD

■ "Court commissioners are quasi-judicial officers of *courts of record...* "[5] Utah Code Ann. § 78-3-31(1)(a) (1992) (emphasis added). Accordingly, commissioners, like judges, are required to make a record of the proceedings they conduct. Ordinarily, the record consists of a verbatim transcription or recording of the entire proceeding. *See* Utah Code Ann. § 78-56-1.1 (1992); Utah Code Jud.Admin. R3-304(3)(A).

In *State ex rel. D.S.K. v. Kasper*, 792 P.2d 118 (Utah App.1990), we recognized the importance of at least a contemporaneous written record of the communication between two courts concerning the assumption of jurisdiction by either court under the UCCJA. *Id.* at 127 n. 9. "We recommend[ed] that where judges communicate by telephone, they make a prompt *written* record of their conclusions and that the basis for any agreement be set

> jurisdiction in the other state is not certainly known, shall transmit the information to the court administrator or other appropriate official for forwarding to the appropriate court.
> (9) Any communication received from another state informing this state of a finding of inconvenient forum because a court of this state is the more appropriate forum shall be filed in the custody registry of the appropriate court. Upon assuming jurisdiction the court of this state shall inform the original court of this fact.
> Utah Code Ann. § 78-45c-7 (1992).

5. As such, court commissioners must "comply with applicable constitutional and statutory provisions, court rules and procedures, and rules of the Judicial Council." Utah Code Ann. § 78-3-31(5)(a) (1992).

6. Because, in the instant case, the commissioner did not make *any* record of her communication with the Colorado court, we need not definitively decide what constitutes an *adequate* record. Generally, a record is adequate if it permits appellate review. *See Briggs v. Holcomb*, 740 P.2d 281, 283 (Utah App.1987). While we have

forth clearly in the record." *Id.* (emphasis added).[6]

■ "Although consistently making a record of all proceedings imposes a greater burden on the trial court, it is impossible for an appellate court to review what may ultimately prove to be important proceedings when no record of them has been made." *Briggs v. Holcomb*, 740 P.2d 281, 283 (Utah App. 1987). The commissioner's failure to make any record, written or otherwise, of her communication with the Colorado court constitutes error because it prevents us from reviewing what was discussed and otherwise assessing the effect that the communication had on her recommendation to defer jurisdiction over this matter to the Colorado court. Of course, Michael is entitled to relief on appeal only if the error is prejudicial.[7]

## HARMLESS ERROR

■ We are convinced that any error in this case was harmless. Extensive evidence and information contained in the record all but compels the commissioner's recommendation that Utah decline to exercise its primary jurisdiction and defer to the jurisdiction of the Colorado court.

The commissioner entered written findings of fact setting forth facts which, although

> previously suggested a written record is sufficient, a verbatim record is no doubt preferable.

7. At least one court has determined that the failure to record the communication and provide the parties an opportunity to be heard was a violation of due process. *See Yost v. Johnson*, 591 A.2d 178 (Del.1991). We need not address this issue, because regardless of whether the Utah court's unrecorded, ex parte communication with the Colorado court violated Michael's due process rights, he has failed to demonstrate any prejudice resulting from the court's actions. Simply put, even if the commissioner had recorded the conversation and afforded Michael all rights of process appurtenant to a formal hearing, given the children's close connection with Colorado he could not possibly have demonstrated that Colorado is an inappropriate forum in which to litigate this case. *Cf. id.* at 182-83 & n. 3 (holding Delaware court's assumption of jurisdiction based on unrecorded, ex parte communication from Virginia court violated due process *and* constituted reversible error because children lacked connections to Delaware sufficient for it to assume jurisdiction under UCCJA).

without verifiable basis in the discussion between the two courts, are either undisputed, adequately supported elsewhere in the record, or self-evident. These findings demonstrate that the commissioner's recommendation to defer to the jurisdiction of the Colorado court was proper under Utah Code Ann. § 78–45c–7 (1992). The commissioner found:

7. Colorado has been the home state of the children since January 1989.

8. The children have attended school in Colorado, have been provided with child care and have received medical care there. Records and witnesses regarding the children's care, education, and treatment are more readily available in Colorado.

9. Based upon the continued residency of the children in Colorado since 1989, and the limited visitation exercised by the non-custodial parent who resides in Utah, Colorado has a close connection with the children at present.

10. The Colorado Court has undertaken a visitation evaluation by a court-appointed psychologist, the results of which will provide assistance to the court in resolving the disputed issues surrounding defendant's visitation rights.

11. The evidence that is available to the Colorado court regarding the children's schooling, medical care, psychological evaluation, family and peer relationships is not available to this court. The children's best interests will be served by allowing visitation issues to be litigated in the forum where that evidence is more readily available.

Given these facts, the commissioner properly concluded that the children will best be served by allowing visitation and custody issues to be litigated in Colorado.[8]

Michael also argues that the commissioner's recommendation to defer jurisdiction to the Colorado court was not supported by the evidence, and, therefore, it was improper for the district court to adopt the recommendation without first holding an evidentiary hearing. We have already determined the commissioner's recommendation was appropriate, despite her failure to make a proper record of her communication with the Colorado court, because the undisputed facts overwhelmingly demonstrate that Utah should defer to the jurisdiction of the Colorado court under section 78–45c–7. Accordingly, any error made by the district court in failing to conduct an evidentiary hearing to determine the appropriateness of the commissioner's recommendation is likewise harmless.

## CONCLUSION

The commissioner erred by failing to make a record of her communication with the Colorado magistrate regarding the assumption of jurisdiction by the Colorado court. However, such error was harmless because the commissioner's recommendation to decline to exercise Utah's continuing jurisdiction over this case, and the trial court's decision based thereon, were inarguably correct. Accordingly, we affirm.

GREENWOOD and JACKSON, JJ., concur.

---

8. Because sufficient, readily available facts so convincingly suggest deferring jurisdiction to the Colorado court under section 78–45c–7, there is simply no basis on which to assume the Colorado magistrate somehow improperly influenced the commissioner's recommendation. We would be more willing to assume that the discussion between the courts was somehow improper if the known facts suggested that the commissioner's recommendation to decline jurisdiction was out of the ordinary. However, given the children's close ties with Colorado and the resulting reasonableness of the commissioner's recommendation, there is no reason to assume the existence of any improper influence in the instant case.