**2024 UT App 116**

# THE UTAH COURT OF APPEALS

PROVO CITY,
Appellant,
*v.*
MIGUEL DAVID GEDO,
Appellee.

Opinion
No. 20230687-CA
Filed August 15, 2024

Fourth District Court, Provo Department
The Honorable James R. Taylor
The Honorable Robert A. Lund
No. 191403472

J. Brian Jones, Stephen H. Schreiner, Matthew M.
Griffiths, Nicholas Muhlestein, Eric R. Lemus, and
Robert M. Trombly, Attorneys for Appellant

Neil D. Skousen, Attorney for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES JOHN D. LUTHY and AMY J. OLIVER concurred.

HARRIS, Judge:

¶1      After a two-day trial, a jury convicted Miguel David Gedo on two counts of sexual battery. But it was later discovered that the trial court lost—or never made—the audio recording of the trial. Based largely on the lack of a transcript, the trial court granted Gedo's request for a new trial. Then, on the day the new trial was scheduled to begin, the trial court dismissed the case altogether, concluding that the statute of limitations had run on the charged crimes. Provo City (the City) now appeals, and challenges both the trial court's order dismissing the case as well as the order granting Gedo a new trial. We agree with the City that the trial court erred by dismissing the case as untimely filed.

But we discern no abuse of discretion in the trial court's grant of Gedo's request for a new trial, and we therefore remand the matter so that the new trial can be held.

BACKGROUND

¶2    In October 2017, the City charged Gedo with two misdemeanor counts of sexual battery related to events alleged to have occurred in June or July 2017. According to the City, Gedo inappropriately touched a woman who worked under his supervision. On November 21, 2019, the assigned judge dismissed that case, without prejudice to refiling, when the City's witnesses failed to appear at a scheduled preliminary hearing.

¶3    Later that very same day—November 21, 2019—the City filed a new criminal case against Gedo, the one that gives rise to this appeal. In that case, the City again charged Gedo with two misdemeanor counts of sexual battery related to events alleged to have occurred in June or July 2017. Both sides agree that the second case concerns the same charged conduct as the first case, and that it simply represents the refiling of the charges that were dismissed without prejudice in the first case.

¶4    Gedo later filed a motion to dismiss the refiled case, pointing out that the applicable limitations period is two years following commission of the alleged crime, and asserting that the limitations period had therefore expired in June or July 2019, months before the case was refiled. In response, the City argued that the limitations period had not expired because the filing of the earlier case had tolled the running of the limitations period. The trial court—Judge Taylor, at the time—agreed with the City and denied Gedo's motion, explaining that there is "clear precedent authority in Utah that when prosecution of an incident [is] commenced and then it is terminated before conviction, then the statute of limitations is tolled during that period."

¶5     The case was later reassigned to Judge Lund, and it eventually proceeded to a two-day jury trial. At the conclusion of the trial, the jury convicted Gedo on both counts. A few weeks later, Gedo filed a pro se motion seeking new counsel, asserting that his trial attorney (Trial Counsel) had performed deficiently. Among other things, Gedo claimed that Trial Counsel failed to meet with him "in person until one hour before trial" and that despite having provided his contact information, Gedo rarely heard from Trial Counsel. In particular, Gedo asserted that Trial Counsel had been unprepared for trial and had failed to lodge certain objections. With regard to these objections, Gedo's allegations were quite specific: he asserted that Trial Counsel had failed to object to, among other things, the City's introduction of certain evidence Gedo believed hadn't been properly disclosed, certain statements the prosecutor made during closing arguments, and the seating of several jurors. After Gedo's filing, Trial Counsel moved to withdraw, and the court later appointed new counsel (Post-Trial Counsel).

¶6     Soon after being appointed, Post-Trial Counsel requested a copy of the audio recording of the trial so that he could create a transcript and begin investigating Gedo's allegations regarding Trial Counsel's performance. Two weeks passed, and no audio recording arrived, so Post-Trial Counsel sought and obtained additional time within which to "procure the evidence and transcripts necessary" to support a motion for a new trial. In that filing, Post-Trial Counsel stated that Gedo had informed him that Trial Counsel had performed deficiently in several respects—including failing to investigate the case, failing to call witnesses, and failing to make timely objections—and he argued that, if those assertions were true, a new trial would be warranted, but he asked for leave to supplement this nascent request for a new trial with a more fulsome brief once he received the recording.

¶7     But the requested audio recording never arrived. According to an email from court staff, there existed "some

recording . . . from day 2" of the trial, but court staff had "been unable to locate the recording." The record submitted to us on appeal does not contain any further explanation of the reasons why no recording of the trial exists. All parties agree, however, that there is no recording and that—as the City puts it—"the loss of the trial transcript was an error on the part of the [trial] court."

¶8 Sometime later, Gedo filed a motion for a new trial, invoking rule 24(a) of the Utah Rules of Criminal Procedure, which allows a trial court to "grant a new trial in the interest of justice if there is any error or impropriety which had a substantial adverse effect upon the rights of a party." In the motion, Gedo pointed out that no transcript of the trial existed, and he asserted that "reconstruction of the record would be seemingly impossible." Gedo maintained that the interest of justice demanded a new trial here "because the lack of record makes it impossible for any [c]ourt to determine whether Gedo's constitutional right to a fair trial" was violated. The City acknowledged the absence of a transcript, but it nevertheless opposed Gedo's motion, asserting that Gedo had "not shown any nonspeculative prejudice resulting from gaps in the trial record."

¶9 After full briefing and oral argument, the trial court granted Gedo's motion and ordered that a new trial be held. In making its oral ruling, the court noted that some aspects of Trial Counsel's performance had "raised a red flag" in the court's mind regarding Trial Counsel's effectiveness, and the court offered its view that Trial Counsel had, at times, been "somewhat shooting from the hip." The court was specifically critical of Trial Counsel's level of preparation, but the court nevertheless stated that "there was nothing in particular" about Trial Counsel's actions during the trial that "seem[ed] particularly deficient." However, the court noted that it had invited Trial Counsel to respond in writing to Gedo's pro se allegations of deficient performance and that Trial Counsel hadn't filed anything, a fact the court interpreted as "corroborat[ion of] Mr. Gedo's contentions." And finally, the

court noted that because of the missing audio recording of the trial, there was "no way for Mr. Gedo or [Post-Trial Counsel] to recreate the record to analyze the effectiveness of [Trial Counsel's] performance at trial." For all those reasons, taken together, the court ordered that a new trial be held, and it scheduled that trial to begin on April 25, 2023.[1]

¶10   After business hours on April 24, the day before trial was to start, Gedo filed another motion to dismiss the case, asserting again—as he had at least once before, through previous counsel[2]—that the City had filed the case more than two years after the alleged conduct occurred and that the case was therefore time-barred. The next morning, before the City had a chance to file any written response to Gedo's latest motion, the trial court— this time, Judge Lund—granted the motion to dismiss, explaining in an oral ruling that because the case was filed "two years and four months" after the charged conduct, the case was untimely filed. Although the record indicates that the court had "met with counsel in chambers," off the record, to discuss the motion, the

---

1. Although it had the right to do so, the City did not immediately appeal the court's order granting Gedo a new trial. *See* Utah Code § 77-18a-1(3)(f) (stating that the "prosecution may, as a matter of right, appeal from . . . an order granting a new trial").

2. In addition to the previous motion that Judge Taylor ruled on, *see supra* ¶ 4, Gedo had also filed a second previous motion—this one made through a different attorney and filed after Judge Lund had taken over the case—again asking the court to dismiss the case on statute of limitations grounds. But Gedo withdrew this second motion just a few days after he filed it, and he did so, through counsel, on the record at a hearing before Judge Lund. The record submitted to us does not include a transcript of that hearing, so we do not know the reason for Gedo's withdrawal of the motion. At any rate, it does not appear that Judge Lund was asked to make a ruling on that motion at that time.

court did not afford the parties an opportunity to argue the merits of the motion on the record. There is no indication in the record that the court ever analyzed—as Judge Taylor had—whether the running of the limitations period had been tolled by the filing of the earlier case. When given a post-ruling opportunity to "make a record," the City stated simply that it had "oppose[d]" the motion and that it was "only given [the] motion 12 hours before court and [was therefore] not given proper time to be able to respond." The court was unpersuaded by that objection, and it later ordered the entire case dismissed.

## ISSUES AND STANDARDS OF REVIEW

¶11    The City now appeals, and challenges both the trial court's order of dismissal as well as its order granting Gedo's motion for a new trial. We review for correctness the court's order dismissing the case on statute of limitations grounds. *See State v. Lusk*, 2001 UT 102, ¶ 11, 37 P.3d 1103 ("[W]hether the statute of limitations has run is a legal conclusion to be reviewed for correctness.").

¶12    "Generally speaking, a trial court's decision to grant or deny a motion for a new trial is reviewed for an abuse of discretion." *Peterson v. Hyundai Motor Co.*, 2021 UT App 128, ¶ 30, 502 P.3d 320 (quotation simplified), *cert. denied*, 509 P.3d 768 (Utah 2022). But in reality, "our standard of review in this context is often more nuanced than that," and depends on "the specific grounds upon which a new trial was sought" and, more particularly, on "whether the party is challenging the trial court's determination as to whether a trial impropriety occurred at all or is, instead, challenging the court's determination as to whether the identified error required a retrial." *Olé Mexican Foods Inc. v. J & W Distrib. LLC*, 2024 UT App 67, ¶ 25, 549 P.3d 663, *petition for cert. filed*, June 10, 2024 (No. 20240622).

¶13    Here, all parties agree that an error or irregularity occurred in the administration of the trial: the court failed to make or

maintain a record of the proceedings. Thus, the part of the order that the City is challenging is the part in which the trial court determined that a new trial was warranted, "in the interest of justice," because the court's own error "had a substantial adverse effect upon the rights of a party." *See* Utah R. Crim. P. 24(a). In situations like this one, where a trial court has made an assessment that "the error or impropriety was significant enough to warrant a retrial," we "afford deference to a trial court's determination, reviewing [it] only for abuse of discretion." *See Peterson*, 2021 UT App 128, ¶ 32; *see also State v. De La Rosa*, 2019 UT App 110, ¶ 9, 445 P.3d 955 (stating that determinations about whether a trial error had "a substantial adverse effect upon the rights of a party" are "entirely within the discretion of the trial court due to its advantaged position to judge the impact of legal errors on the total proceedings" (quotation simplified)).

## ANALYSIS

### I. Motion to Dismiss

¶14    The City's first argument is that the trial court erred by dismissing this case on timeliness grounds. As the City sees it, the trial court got it right the first time when it denied Gedo's earlier motion and explained that the running of the limitations period had been tolled during the pendency of the earlier-filed case. We agree with the City.

¶15    The statute of limitations applicable to this case—which involves misdemeanor criminal charges—dictates that the City was obligated to file the case "within two years after" the crimes were allegedly committed. *See* Utah Code § 76-1-302(1)(b) (stating that "a prosecution for . . . a misdemeanor other than negligent homicide shall be commenced within two years after it is committed"). The City alleges that Gedo committed the crimes in question in June or July 2017. Thus, absent tolling of the limitations period, the City would have had to file charges against

Gedo before June or July 2019. And Gedo correctly points out that *this* case wasn't filed until November 2019.

¶16    But under Utah law, the limitations period applicable in criminal cases is tolled by the filing of an information. *State v. Strand*, 674 P.2d 109, 110 (Utah 1983) ("The filing of an information commences the action and thus tolls the running of the applicable statute of limitations.").[3] Citing this principle of law, the City asserts that the limitations period applicable here was tolled in October 2017 when it filed the first criminal case against Gedo related to these alleged crimes. The City points out that less than four months of the two-year limitations period ran before the first case was filed, and that the second case—*this* case—was filed on the very same day that the first case was dismissed. Thus, in the City's view, its refiling of the case in November 2019 was timely because at that point, only about four months (plus perhaps one day) of the two-year limitations period had run.

¶17    The City's legal analysis is sound and is compelled by our supreme court's decision in *Strand*. Indeed, not even Gedo disagrees—in his brief, he also cites *Strand* as controlling law, and he concedes that "tolling may have applied" in this situation. Thus, we conclude that the City timely refiled this case and that there isn't a statute of limitations problem here.

¶18    Gedo, however, asserts that the City failed to preserve any argument that the running of the limitations period was tolled. He points out that the City's only objection, apparent on the record, in response to Gedo's *renewed* motion was that the City had "not [been] given proper time to be able to respond" to the motion. From these facts, he argues that the City "failed to raise" a tolling

---

3. As far as we are aware, federal law is no different. *See, e.g.*, *United States v. Qayyum*, 451 F.3d 1214, 1218 (10th Cir. 2006) ("The filing of an indictment tolls the limitations period for the charges contained in the indictment . . . ." (quotation simplified)).

argument in such a way as to give the trial court "the opportunity to rule on it." We disagree.

¶19    As an initial matter, we acknowledge the City's assertion that it didn't have a realistic opportunity to respond to Gedo's renewed motion. That motion was filed after business hours the evening before trial was scheduled to begin, rendering the filing of any meaningful written response by the next morning difficult, if not impossible. Moreover, the record submitted to us indicates that, while there was apparently some off-the-record discussion in chambers about the motion the next morning before trial was to begin, the trial court did not afford the City any opportunity to argue the motion on the record. We are therefore skeptical of Gedo's assertion that the City's actions on the morning of trial can fairly be construed as a failure to preserve any particular defenses to Gedo's last-minute motion to dismiss.

¶20    But more substantively, the City had fully briefed its tolling argument previously, during the litigation regarding Gedo's earlier identical motion. In its written opposition to that earlier motion, the City specifically argued that the limitations period had not expired because the filing and pendency of the earlier case had tolled the running of the limitations period. And the trial court—Judge Taylor, at the time—made a ruling accepting that argument, denying Gedo's motion precisely because there exists "clear precedent authority in Utah that when prosecution of an incident [is] commenced and then it is terminated before conviction, then the statute of limitations is tolled during that period." Thus, the City not only raised the tolling argument in a way that gave the trial court an opportunity to rule on it, the court actually *did* rule on it. This is sufficient to preserve the issue for our review on appeal, because—for present purposes—it does not matter that the tolling argument was expressly raised to Judge Taylor rather than to Judge Lund: both judges represented the same judicial office. *See Build, Inc. v. Utah Dep't of Transp.*, 2018 UT 34, ¶ 31, 428 P.3d 995 (stating that a

"successor judge" who takes over a case from a predecessor is "the same judicial officer as the judge" whom he or she succeeded, and that appellate courts indulge the "fiction . . . that there is no such thing as a predecessor or successor—just the district court" (quotation simplified)); *see also Jones & Trevor Mktg., Inc. v. Lowry*, 2010 UT App 113, ¶ 14, 233 P.3d 538 (stating that "two judges" who presided over the same case at different times were certainly "different persons" but represented "a single judicial office" (quotation simplified)), *aff'd*, 2012 UT 39, 284 P.3d 630.

¶21   The City's tolling argument was therefore properly preserved for our review on appeal, and not even Gedo asserts that the argument is incorrect on its merits. We therefore conclude that the trial court erred by dismissing the case on statute of limitations grounds, and we reverse the court's dismissal order.

## II. Motion for a New Trial

¶22   Because we find merit in the City's argument that dismissal of the case was improper and have now revived the case, we must examine the City's second assertion: that the trial court abused its discretion by ordering that a new trial be held. As the City sees it, the trial court's new-trial order should be vacated and the guilty verdict from the first trial reinstated. We reject the City's arguments and affirm the court's order granting a new trial.

¶23   Gedo's motion for a new trial was grounded in rule 24(a) of the Utah Rules of Criminal Procedure, which allows trial courts to "grant a new trial in the interest of justice if there is any error or impropriety which had a substantial adverse effect upon the rights of a party." Here, all parties agree that an error or impropriety occurred during Gedo's trial: the court did not make (or later lost) any audio recording of the trial, and no such recording currently exists. The trial court determined that this error had a substantial adverse effect on Gedo's rights and that Gedo was therefore entitled to a new trial in the interest of justice. As noted, we review this determination deferentially, for abuse of

discretion. *See State v. De La Rosa*, 2019 UT App 110, ¶ 9, 445 P.3d 955; *see also State v. Torres-Orellana*, 2021 UT App 74, ¶ 47, 493 P.3d 711 (Harris, J., concurring) ("There is simply no jurist better positioned to assess whether the interest of justice requires a new trial, and whether a trial error or impropriety has caused a substantial adverse effect on the defendant's rights, . . . than the jurist who just finished personally observing the entire warp and weft of trial." (quotation simplified)), *cert. granted*, 502 P.3d 268 (Utah 2021).

¶24 Because the error in question involved loss of the trial transcript, the trial court analyzed the situation by reference to *State v. Martinez*, 2021 UT App 11, 480 P.3d 1103, a case in which we applied a three-part test in assessing a defendant's request for "a new trial based on an inadequate record." *Id.* ¶ 34. First, a defendant "must show that the [trial] court erred in creating a record of the proceedings." *Id.* Second, a defendant "must show that the record cannot be reconstructed, through no fault of [their] own." *Id.* And third, a defendant "must show prejudice, meaning that any remaining gaps in the record substantially affect [the] ability to appeal a preserved issue." *Id.*; *see also State v. Menzies*, 845 P.2d 220, 228 (Utah 1992) (noting that the "mere existence" of transcription errors "does not mandate a new trial" and that, instead, prejudice must also be shown); *State v. Russell*, 917 P.2d 557, 559 (Utah Ct. App. 1996) (stating that defendants are not "entitled to a new trial whenever there is a gap in the record" and that, instead, they must show "that a specific error occurred and that the missing record was critical to its resolution"), *cert. denied*, 925 P.2d 963 (Utah 1996).

¶25 The first two parts of this test are clearly met here. As noted, all parties agree that the trial court erred by failing to ensure that a record of the proceedings was made. And where, as here, it is the entire transcript of a multi-day trial that is missing—as opposed to just some small portion of a long trial, or the entire transcript of a very short hearing—we agree with Gedo that,

without holding a new trial, the record cannot meaningfully or practicably be reconstructed. *See State v. Tunzi*, 2000 UT 38, ¶ 3, 998 P.2d 816 (holding that when one entire day of a two-day trial transcript was missing, the record could not be practicably reconstructed, and noting that while "reconstruction of the record may be appropriate in circumstances where only a minor portion of the record is missing, such an attempt, in our experience, is unduly burdensome for the trial court and the parties when a major portion of the record is missing"); *see also State v. T.R.*, 2002 UT App 178U, paras. 1–3 (per curiam) (holding that where the entire trial record was unavailable because two courtroom microphones had not functioned during the trial, any attempt to reconstruct the record would be "impossib[le] and futil[e]").

¶26    Thus, the issue here is whether Gedo can show that he has suffered prejudice from the lack of a trial transcript, a showing that ordinarily requires appellants to demonstrate that "any remaining gaps in the record substantially affect [their] ability to appeal" an issue that they would be otherwise entitled to appeal. *See Martinez*, 2021 UT App 11, ¶ 34. On this record, we discern no abuse of discretion in the trial court's (at least implicit) conclusion that Gedo had suffered prejudice.[4]

---

4. While the court made no *express* mention of prejudice, the court's statements clearly encompass at least an implied prejudice determination. In particular, the court noted that Gedo had raised specific allegations of ineffective assistance of counsel, and concluded that, because of the missing audio recording, there was "no way for Mr. Gedo or [Post-Trial Counsel] to recreate the record to analyze the effectiveness of [Trial Counsel's] performance at trial." Where, as here, a trial court's "ruling is apparent from the record," there is no need to "remand for more precise findings." *See State v. Robles-Vasquez*, 2015 UT App 108, ¶ 9, 349 P.3d 769; *see also Park City Mun. Corp. v. Woodham*, 2024

(continued…)

¶27 Recall that Gedo filed a pro se motion—before appointment of Post-Trial Counsel and before anyone knew that the audio recording was unavailable—asserting that Trial Counsel had performed deficiently in at least two particulars: that he had been unprepared for trial and had failed to lodge certain specific objections. And Post-Trial Counsel followed up by later introducing a third alleged deficiency: that Trial Counsel had failed to call certain witnesses. The trial judge—the person who presided over and sat through the trial—believed these claims to be at least colorable; indeed, that judge independently questioned Trial Counsel's preparedness and added his own observation that Trial Counsel had been "shooting from the hip." And he viewed Gedo's claims as "corroborate[d]" by Trial Counsel's failure to take the court up on its invitation to file a brief.

¶28 Moreover, Gedo's specific ineffectiveness allegations—especially the one alleging that Trial Counsel failed to lodge certain objections—are dependent on a trial transcript for verification. While two of the claims (failure to investigate and call witnesses) could conceivably be at least partially supported through alternative means (e.g., affidavits), the absence of a trial transcript makes successful presentation of even these claims much harder because it prevents Post-Trial Counsel from assessing the thoroughness of Trial Counsel's witness examinations and the tenor of his questioning. But most significantly, the claim dealing with asserted failures to object is entirely dependent on a transcript for its efficacy, because there is no other reliable way to prove that Trial Counsel did (or did not) lodge the objections in question, and no other realistic way to show the context in which the opportunity to lodge those objections arose. On this record, Gedo's allegations are specific enough, and dependent enough on a trial transcript for proof, that his efforts cannot fairly be described as "fishing for error." *See*

UT 3, ¶¶ 17–18, 545 P.3d 221 (stating that "courts can rule expressly or by necessary implication" (quotation simplified)).

*Russell*, 917 P.2d at 559 (stating that defendants are not entitled to "a complete record so appellate counsel can go fishing for error" but, instead, are only entitled to "a record adequate to review specific claims of error already raised").

¶29    The City resists this conclusion by invoking the principle of law—sometimes referred to as the "rule of regularity"—under which "we presume the regularity of the proceedings below" when there is a problem with the adequacy of the record on appeal. *See State v. Pritchett*, 2003 UT 24, ¶ 13, 69 P.3d 1278. But here, that rule works *against* the City—the appellant here—and not in its favor. In many cases in which the rule of regularity is invoked, the appellant is a criminal defendant who is challenging the legality of a conviction following trial. *See, e.g.*, *id.*; *accord State v. Burnside*, 2016 UT App 224, ¶ 54, 387 P.3d 570. Here, however, it is the City—and not the defendant—who is the appellant, and the order being challenged is not Gedo's conviction and sentence but, instead, the trial court's order granting Gedo's motion for a new trial. In this situation, to the extent that the rule of regularity has any application at all—and we are not convinced that it does—that rule operates to bolster the trial court's order granting a new trial. In the absence of a trial transcript showing the contrary, we will presume the correctness of the implicit determination made by the trial court—the judicial officer who presided over and observed the very trial whose transcript we do not have—that the error in question "had a substantial adverse effect upon" Gedo's ability to meet his burden of demonstrating the ineffective assistance of Trial Counsel. *See* Utah R. Crim. P. 24(a); *see also Pritchett*, 2003 UT 24, ¶ 13 ("When crucial matters are not included in the record, the missing portions are presumed to support the action of the trial court." (quotation simplified)).

¶30    Accordingly, on this record we discern no abuse of discretion in the trial court's determination that the court's own recording error had a substantial adverse effect on Gedo's rights,

or in the court's follow-on determination that, in the interest of justice, a new trial was warranted.

CONCLUSION

¶31 With regard to the statute of limitations issue, the trial court got it right the first time: the pendency of the first criminal case tolled the running of the limitations period, and therefore the refiled information was not untimely. Accordingly, the court erred when it later ordered the refiled case dismissed on timeliness grounds. But the court did not abuse its discretion when it ordered that a new trial be held due to the court's own failure to make or preserve an audio recording of the trial.

¶32 For these reasons, we reverse the court's order of dismissal but affirm its order granting Gedo a new trial, and we remand this matter to the trial court so that the new trial may take place.

_____