# 2013 UT App 228

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
ERIC JOSEPH DAVIS,
Defendant and Appellant.

Opinion
No. 20110204-CA
Filed September 19, 2013

Third District, Salt Lake Department
The Honorable Royal I. Hansen
No. 101900931

Joan C. Watt, Michael R. Sikora, and Maren E.
Larson, Attorneys for Appellant
John E. Swallow and Christopher D. Ballard,
Attorneys for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGE CAROLYN B. MCHUGH concurred. JUDGE WILLIAM A.
THORNE JR.[1] concurred, with opinion.

VOROS, Judge:

¶1 Eric Joseph Davis appeals from his convictions for object rape and forcible sodomy. Utah Code Ann. §§ 76-5-402.2, -403(2) (LexisNexis 2012). He raises three grounds for reversing his convictions: (1) alleged prosecutorial misconduct in cross-examining Davis and in closing argument, (2) evidence concerning

---

1. Judge William A. Thorne Jr. participated in and voted on this case as a regular member of the Utah Court of Appeals. He retired from the court before this decision issued.

a post-offense order and protective measures, and (3) a supplemental jury instruction concerning the prosecutor's charging discretion. We affirm.

BACKGROUND[2]

¶2     Davis and C.D. regularly used sex toys together. One day, Davis called C.D. and told her he had "a surprise" for her. He later showed her an "enormous" dildo. Labeled "XXL," its size was "extremely intimidating" to C.D. She objected to it and asked Davis to return it to the store. According to C.D., Davis became "quiet" and "distant" and drank several beers with an eight-percent alcohol content. Davis admitted that he drank about six beers that evening.

¶3     Later that evening, C.D. took a bath. She testified that, while she was in the bathtub, Davis brought the dildo into the bathroom. C.D. told him, "Don't get that near me. No way. You're not using that on me. Hell, no." C.D. further testified that Davis forcibly pulled her from the bathtub, bent her over a low wall in the bathroom, pushed her face into the sink, and forcibly inserted the dildo into her vagina.

¶4     C.D. "scream[ed] in pain and ask[ed Davis] to stop" and unsuccessfully tried to remove the dildo herself. Davis told C.D. that "if [she] didn't quit crying, . . . he'd give [her] something to cry about." Davis also forced his penis and the dildo into C.D.'s anus. Eventually Davis stopped using the dildo on C.D. and she cooperated with Davis's further sexual requests, hoping that he "would not try to use [the dildo] on [her] again." At the time, Davis was six feet two inches tall and weighed 250 pounds; C.D. was five feet six inches tall and weighed 120 pounds.

---

2. We recite the facts from the record in the light most favorable to the jury's verdict. *State v. Geukgeuzian*, 2004 UT 16, ¶ 2, 86 P.3d 742.

¶5    The next morning, C.D. went to her job at a medical facility and, on her lunch break, called her mother, who convinced C.D. to report the incident. After work, C.D. called the police. The responding officer noted that C.D. was initially "somber" and "almost unemotional" but "broke down crying" on several occasions. The officer took C.D.'s statement before escorting her to the hospital for a sexual-assault examination.

¶6    At the hospital, the attending nurse (Nurse) documented C.D.'s bruises and other injuries with photographs and medical diagrams. Nurse noted a bruise on C.D.'s cervix that was likely caused by "a lot" of blunt force. Nurse also found a laceration on C.D.'s anus as well as visible redness around C.D.'s genitals and anus. C.D. had bruises on her thighs, hips, knees, left arm, and the back of her left hand. C.D. reported vaginal, rectal, abdominal, and hip pain to Nurse.

¶7    At trial, Davis testified that the encounter was entirely consensual. He also testified that C.D.'s only objection to the dildo was the amount of money he had spent on it because he was unemployed at the time of these events. He speculated that C.D. was motivated to falsely accuse him because, he claimed, she was seeing someone else. Davis did not introduce evidence to support this theory.

ISSUES AND STANDARDS OF REVIEW

¶8    First, Davis contends that the prosecutor committed misconduct by mischaracterizing the reasonable doubt standard, improperly commenting on the evidence, referring to statistics not in the evidence, and shifting the burden of proof to Davis.

¶9    Davis preserved some of these claims by presenting them "to the trial court in such a way that the trial court ha[d] an opportunity to rule" on them. *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (citation and internal quotation marks

omitted). Traditionally, when such claims are preserved, we have reviewed the trial court's rulings on "prosecutorial misconduct claims for an abuse of discretion." *State v. Kohl*, 2000 UT 35, ¶ 22, 999 P.2d 7.

¶10 But what standard applies in determining whether unpreserved prosecutorial misconduct claims rise to the level of reversible error is less clear. Unpreserved claims are generally subject to the plain error standard of review, which requires the appellant to show "(i) An error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, . . . ." *See State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). It is tempting to conclude that if a prosecutor's comments constitute garden-variety misconduct, "the defendant must show that the jury was 'probably influenced by those remarks,'" *State v. Powell*, 2007 UT 9, ¶ 36, 154 P.3d 788 (quoting *State v. Troy*, 688 P.2d 483, 486 (Utah 1984)), whereas if "a prosecutor's comments constituted a constitutional violation," the reviewing court will reverse unless "the constitutional error was harmless beyond a reasonable doubt." *State v. Tillman*, 750 P.2d 546, 555 (Utah 1987) (internal quotation marks omitted) (citing *Chapman v. California*, 386 U.S. 18, 23–24, (1967); *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986)).

¶11 However, as we recently explained, questions regarding the prejudice standard to be applied in prosecutorial misconduct cases "are not readily resolvable under our current precedent." *State v. Wright*, 2013 UT App 142, ¶ 41 n.6, 304 P.3d 887. In particular, our case law "is not entirely clear" on "what standard of harmlessness applies, and who bears the burden of proof, when a claim of constitutional error is raised within the plain error context." *State v. Cox*, 2012 UT App 234, ¶ 15 n.2, 286 P.3d 15 (Voros, J., concurring in part and concurring in the result in part).

¶12 Accordingly, in *Wright* we took the cautious approach of "assuming that the harmless beyond a reasonable doubt standard applies, even though the challenge to the error was unpreserved and does not involve a violation of a fundamental constitutional

right." 2013 UT App 142, ¶ 41 n.6. Because, as in *Wright*, the briefing here does not focus on these distinctions, and because in any event the choice of prejudice standard is not outcome determinative, we follow *Wright* and apply the harmless beyond a reasonable doubt standard to Davis's prosecutorial misconduct claims. *See State v. Menzies*, 889 P.2d 393, 399 n.3 (Utah 1994) (explaining horizontal stare decisis).

¶13   Second, Davis contends that the trial court abused its discretion by admitting irrelevant testimony into evidence. "A trial court has broad discretion in deciding whether evidence is relevant, and we review a trial court's relevance determination for abuse of discretion." *State v. Fedorowicz*, 2002 UT 67, ¶ 32, 52 P.3d 1194.

¶14   Third, Davis contends that the omission from the record of the trial court's response to a question from the jury violates rule 17(n) of the Utah Rules of Criminal Procedure, thus undermining appellate review and making it impossible for Davis to determine whether his trial counsel performed effectively. The State responds that although the trial court failed to preserve the note, Davis has not satisfied his burden to prove that prejudice resulted. "Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." Utah R. Crim. P. 30(a); *see also State v. Calliham*, 2002 UT 86, ¶ 45, 55 P.3d 573 ("Notwithstanding error by the trial court, we will not reverse a conviction if we find that the error was harmless.").

¶15   Davis also contends that, insofar as the general tenor of the trial court's response to the jury may be determined from the existing record, the response constituted an improper comment on the strength of the State's case. The State responds that Davis has not adequately reconstructed the record and that the trial court's response was correct and non-prejudicial. "We review challenges to jury instructions under a correctness standard." *Steffenson v. Smith's Mgmt. Corp.*, 862 P.2d 1342, 1346 (Utah 1993) (internal quotation marks omitted). "However, to reverse a trial verdict,

[we] must find not a mere possibility, but a reasonable likelihood that the error affected the result." *Id.* at 1347; *see also* Utah R. Crim. P. 30(a) ("Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded."); *State v. Ingleby*, 2004 UT App 447, ¶¶ 11–13, 104 P.3d 657 (affirming a conviction, despite assuming the trial court responded to a jury question "improvidently," because "any error that might be found is harmless").

¶16     Finally, Davis contends that, even if none of his claims are sufficiently harmful alone to require reversal, the combined effect of the underlying errors is so great as to require reversal under the cumulative error doctrine. Under the cumulative error doctrine, we apply the "standard of review applicable to each underlying claim or error." *Radman v. Flanders Corp.*, 2007 UT App 351, ¶ 4, 172 P.3d 668. We reverse only if the cumulative effect of multiple errors undermines our confidence that a fair trial was had. *State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993).


ANALYSIS

I. Prosecutorial Misconduct

¶17     Davis contends that the "prosecutor engaged in repeated instances of misconduct which undermines the fairness of this trial. This alleged misconduct included: (1) improperly diminish[ing] the burden of proof . . . ; (2) improperly asking [Davis] whether the shop clerk lied and suggesting that [Davis] was lying; (3) disparaging [Davis] . . . ; (4) denigrating the defense, arguing facts not in evidence, and personalizing . . . ; and (5) shifting the burden, arguing facts not in evidence, and denigrating the defense by arguing, among other things, that the defense offered no reason why [C.D.] would make up the claim . . . ." He argues that a new trial is required because "[a]lone or together, this misconduct impacted the fairness of the trial and undermined confidence in the result."

¶18    We apply a two-part test to determine whether the remarks made by counsel are so objectionable as to merit a reversal in a criminal case. We first consider whether "the remarks call[ed] to the attention of the jurors matters which they would not be justified in considering in determining their verdict." *State v. Troy*, 688 P.2d 483, 486 (Utah 1984) (citation and internal quotation marks omitted). If so, we then determine whether the remarks were harmless beyond a reasonable doubt. *See State v. Wright*, 2013 UT App 142, ¶ 41 n.6, 304 P.3d 887 (as explained *supra* ¶ 12).

¶19    "A prosecutor has the duty and right to argue the case based on the total picture shown by the evidence or the lack thereof . . . ." *State v. Hales*, 652 P.2d 1290, 1291 (Utah 1982) (citation and internal quotation marks omitted). And in closing, counsel has "considerable latitude" to argue his or her view of the evidence and "the inferences and deductions arising therefrom." *State v. Tillman*, 750 P.2d 546, 560 (Utah 1987) (citation omitted). Nevertheless, a prosecutor may not argue a case based on facts not admitted into evidence. *See State v. Palmer*, 860 P.2d 339, 344 (Utah Ct. App. 1993) ("A comment by a prosecutor during closing argument that the jury consider matters outside the evidence is prosecutorial misconduct.").

¶20    Determining prejudice "involves a consideration of the circumstances of the case as a whole. In making such a consideration, it is appropriate to look at the evidence of defendant's guilt." *Troy*, 688 P.2d at 486.

> If proof of defendant's guilt is strong, the challenged conduct or remark will not be presumed prejudicial. Likewise, in a case with less compelling proof, [appellate courts] will more closely scrutinize the conduct. If the conclusion of the jurors is based on their weighing conflicting evidence or evidence susceptible of differing interpretations, there is a greater likelihood that they will be improperly influenced through remarks of counsel.

*Id.* (citation and internal quotation marks omitted). Also relevant is whether "the trial judge's instructions to the jury further weakened any improper impact of the prosecutor's comment." *State v. Dunn*, 850 P.2d 1201, 1225 (Utah 1993). For example, an instruction to "the jury not to consider the statements of counsel as evidence" may be " helpful in neutralizing the harmfulness of error." *Id.*

A.      Cross-Examination

1.      Sarcastic Comments

¶21     Davis contends that the prosecutor improperly commented on the evidence while cross-examining him. Specifically, when Davis stated that it was "kind of embarrassing talking about [his] sex life with other people," the prosecutor replied, "Oh, you bet it is." The trial court sua sponte admonished the prosecutor not to "comment on the evidence." The prosecutor also cross-examined Davis about several parts of his testimony and asked if he had informed the investigating detective of those details. After Davis gave a string of negative responses, the prosecutor said, "There's quite a lot of things that you didn't tell the detective." The defense did not object, and the court did not intervene. Shortly thereafter, the prosecutor asked Davis if his family had passed C.D.'s house while "looking for a car." Davis responded, "Not a car, an SUV, I believe." The prosecutor then asked Davis, "An SUV . . . is not a car?" When Davis replied, "No. It's an SUV," the prosecutor said, "I apologize. I thought it was the same thing." The trial court again admonished the prosecutor sua sponte again for commenting on the evidence and stated, "I won't tell you again."

¶22     Davis asserts that the prosecutor's comments were sarcastic and that sarcasm is improper because it "can imply the prosecutor's opinion of the evidence, and convey to the jury the notion that the government believes the defendant is guilty." He argues that the claim is preserved because the trial court "ruled on

the matters" and that, in any event, the misconduct may be reviewed for plain error.

¶23    The State responds that Davis has failed to demonstrate reversible error because he "does not argue that the trial court's sua sponte admonishments were improper or inadequate to remedy any potential harm that may have stemmed from the comments." In response, Davis argues for the first time in his reply brief that "the trial court should have ordered a mistrial rather than repeatedly chastising the prosecutor."

¶24    "Claims of prosecutorial misconduct are subject to the preservation rule." *State v. Pedersen*, 2010 UT App 38, ¶ 11, 227 P.3d 1264. This rule applies where the defense does not move for a mistrial based on prosecutorial misconduct during trial, but argues on appeal that the trial court erred by failing to declare a mistrial sua sponte. Where a defendant has thus "not preserved his prosecutorial misconduct claim, . . . our review is limited to a determination of whether the court's failure to sua sponte declare a mistrial was plainly erroneous." *Id.*[3]

¶25    Here, Davis did not object to the three comments noted above. In two instances, however, the trial court intervened sua sponte to correct the prosecutor. Accordingly, the only issue on appeal is whether the trial court plainly erred in not also declaring a mistrial. To demonstrate plain error, the defendant must show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993).

¶26    We conclude that the trial court did not plainly err. We agree with Davis that the prosecutor's comments were inappropriate—they expressed the prosecutor's opinion of the

---

3. This application of the preservation rule demonstrates that, notwithstanding that such claims allege "prosecutorial misconduct," on appeal, we review the conduct of the trial judge, not the prosecutor.

evidence and projected a disrespectful attitude toward Davis. We commend the trial court for intervening to rein in the prosecutor. However, Davis has not shown that the prosecutor's sarcastic statements were so obviously prejudicial as to require a mistrial.

¶27 Davis relies on three non-Utah cases in support of his claim. Two of those cases, both from Connecticut, held that the prosecutorial sarcasm complained of in each case was not sufficiently harmful to warrant reversal. *See State v. Salamon*, 949 A.2d 1092 (Conn. 2008); *State v. Santiago*, 850 A.2d 199 (Conn. 2004). The third case cited by Davis, *State v. Breit*, did result in a reversal. 1996-NMSC-067, ¶ 49, 930 P.2d 792. That case involved "a trial out of control," where the prosecutor's misconduct began "[b]arely into his opening statement," when he "attempted to inflame the jury with allegations that were irrelevant, matters that could not permissibly be presented as evidence, and exaggerated claims that no evidence could ever support." *Id.* ¶ 41 (alteration in original). When objections were raised and sustained, "he expressed sarcasm and scorn toward opposing counsel and the court." *Id.* During the questioning of witnesses he "engaged in improper arguments with witnesses," and "even after direct admonition from the court, he attempted to solicit irrelevant comments from the defendant on the testimony of other witnesses." *Id.* ¶ 42. The prosecutor "directed belligerent remarks at opposing counsel," threatened her, and referred to her sarcastically as "sweetheart." *Id.* Throughout the trial, he displayed "sarcasm, sneering, rolling of eyes and exaggerated expressions." *Id.* The prosecutorial misconduct was "pervasive." *Id.* It continued through the closing, even through the rebuttal arguments, during which "the prosecutor made direct appeals to the sympathies and prejudices of the jury, making comments utterly irrelevant to the facts as they applied to the elements of the alleged crime." *Id.* ¶ 43. He "belittled the defendant's fundamental right to remain silent, and portrayed his right to counsel as a ploy to avoid punishment." *Id.* He repeatedly suggested that opposing counsel had "engaged in perjury, lying, and collaborating with the defendant to fabricate a defense." *Id.*

¶28    In sum, the *Breit* prosecutor's misconduct was so "unrelenting and pervasive" that the trial transcript could not "convey the overall atmosphere of a trial infected by wordless misconduct that would never appear in a court record." *Id.* ¶ 45 (citation and internal quotation marks omitted). The trial judge herself was critical of her own error in "permitting the trial to continue long after the prosecutor's uncontrollable intransigence became apparent." *Id.* ¶ 47. The trial judge concluded that the prosecutor lacked "an underlying respect for our system of justice." *Id.* ¶ 48.

¶29    On appeal, the New Mexico Supreme Court stated, "The unavoidable conclusion from such egregious misconduct, is that the prosecutor was fully aware that his actions would deprive Breit of his right to a fair trial." *Id.* The prosecutor "unquestionably acted with willful disregard of the resulting mistrial, retrial, or reversal." *Id.* (internal quotation marks omitted). Thus, "[t]he cumulative effect was to deny the defendant a fair trial. A motion for a mistrial was the only cure." *Id.* ¶ 45.

¶30    Here, the prosecutor did not engage in a course of conduct approaching the "unrelenting and pervasive" misconduct that permeated the trial in *Breit*. Had she done so, we agree that the misconduct may well have been so egregious as to require the trial court to declare a mistrial sua sponte. As it is, however, the prosecutorial misconduct in this case was minor and in two of the three instances corrected on the spot. We readily conclude that the trial court did not plainly err in not sua sponte declaring a mistrial. Moreover, any misconduct was harmless beyond a reasonable doubt.

2.    Questioning Davis's Truthfulness

¶31    Davis claims that the prosecutor's comments on his truthfulness were improper because "[a]sking a defendant whether he lied, commenting on the veracity of the defendant, or calling the defendant a liar is also misconduct." Specifically, Davis testified that, on the day after the incident, C.D. had asked him to bring one

of her personal belongings to her workplace. The prosecutor replied, "And that part you didn't tell . . . the detective? There's quite a lot of things you didn't tell the detective. You lied to the detective when you said everything was great in your relationship, didn't you?" And after Davis testified as to the number of times he and C.D. had had sex that weekend, the prosecutor asked him, "And it's not a lie that you were having sex three times a day for that weekend?" Finally, when Davis testified about having had a job until he suffered an injury, the prosecutor asked, "That's not a lie?"

¶32   Davis raises this claim under the doctrine of plain error. Again, to demonstrate plain error, the defendant must show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). "To establish that the error should have been obvious to the trial court, [the appellant] must show that the law governing the error was clear at the time the alleged error was made." *State v. Dean*, 2004 UT 63, ¶ 16, 95 P.3d 276. Thus, an error is not obvious if "there is no settled appellate law to guide the trial court." *State v. Ross*, 951 P.2d 236, 239 (Utah Ct. App. 1997).

¶33   As stated above, Davis asserts that "[a]sking a defendant whether he lied, commenting on the veracity of the defendant, or calling the defendant a liar is . . . misconduct." Davis cites *State v. Johnson*, 2007 UT App 184, 163 P.3d 695, and several non-Utah cases in support of this assertion. However, in *Johnson* this court did not hold or state that calling the defendant a liar constitutes prosecutorial misconduct. We stated that "courts are split on whether it is improper to characterize a defendant as a liar during closing arguments." *Id*. ¶ 45. We noted that "[s]ome jurisdictions have held that such argument is improper," but "[o]ther jurisdictions disagree and have held that referring to testimony as a lie is not per se prosecutorial misconduct." *Id.* (citations and internal quotation marks omitted). We resolved the issue on appeal in *Johnson* by "assum[ing], without deciding, that the prosecutor's statement that [the d]efendant was a liar was improper," but concluded that "no prejudice resulted from this error because the

trial record is replete with [the d]efendant's inconsistent statements." *Id.* ¶ 46.

¶34   The following year, citing *Johnson*, we stated only that "it *may have been an error* for the State to call [the defendant] a liar." *State v. Otterson*, 2008 UT App 139, ¶ 24, 184 P.3d 604 (emphasis added) (citing *Johnson*, 2007 UT App 184, ¶¶ 42–46). And last year, in a case decided after Davis's opening brief was filed, we held that a prosecutor's statement "that [the d]efendant, in a telephone call from jail, had lied to [his girlfriend] about whether he remembered what happened" "did not constitute misconduct." *State v. Lebeau*, 2012 UT App 235, ¶¶ 9, 20, 286 P.3d 1.

¶35   To be clear, "the evil to be guarded against" in such cases is that "a juror would consider [such] statements to be factual testimony from the prosecutor." *State v. Lafferty*, 749 P.2d 1239, 1256 (Utah 1988). Consequently, "a prosecutor engages in misconduct when he or she expresses personal opinion or asserts personal knowledge of the facts." *State v. Bakalov*, 1999 UT 45, ¶ 57. "However, a prosecutor may draw permissible deductions from the evidence and make assertions about what the jury may reasonably conclude from those deductions." *Id.*

¶36   Here, while Davis complains that the prosecutor called him a liar, he has not undertaken to show that a juror would consider the statement to be factual testimony from the prosecutor rather than permissible deductions from the evidence. Consequently, he has not demonstrated that it should have been obvious to the trial court that it was required to intervene. Furthermore, we conclude that any error was harmless beyond a reasonable doubt.

3.    Asking Davis Whether Another Witness Had Lied

¶37   Davis also claims that the prosecutor should not have asked him to comment on another witness's testimony. In cross-examining Davis, the prosecutor asked Davis whether the store clerk's testimony was a lie. Specifically, the prosecutor asked whether the dildo he bought "had no clitoral stimulator." Davis

replied that it did have a clitoral stimulator, that the store clerk had described it to him as having one, and that the store clerk had demonstrated the feature. The prosecutor then asked, "[W]hen [the store clerk] testified earlier . . . that [it] did not have a clitoral stimulator, she was lying?" Defense counsel objected, but the trial court overruled the objection, saying the prosecutor could "ask him *if he heard that*." (Emphasis added.) Davis again stated that the clerk had told him that the dildo vibrated and demonstrated it.

¶38    Asking a defendant to comment on the veracity of another witness is improper. Such a question is argumentative and seeks information beyond the defendant's competence. *State v. Emmett*, 839 P.2d 781, 787 (Utah 1992). "The prejudicial effect of such a question lies in the fact that it suggests to the jury that a witness is committing perjury even though there are other explanations for the inconsistency." *Id.* Moreover, "it puts the defendant in the untenable position of commenting on the character and motivations of another witness," whom the jury may find sympathetic. *Id.* Nonetheless, we will not reverse when no prejudice results. *See State v. Stevenson*, 884 P.2d 1287, 1291 (Utah Ct. App. 1994).

¶39    The prosecutor should not have asked Davis whether the store clerk was lying. However, the trial court reframed the question as a request for Davis to repeat his own account of the disputed conversation without speculating on why his account differed from that of the store clerk. Davis followed the trial court's guidance and did not comment on whether the store clerk was lying. Accordingly, Davis did not speculate beyond his competence and did not comment "on the character and motivations of another witness." *Emmett*, 839 P.2d 781, 787. Moreover, neither the prosecutor's question (as reframed by the court) nor Davis's answer suggested "to the jury that a witness [was] committing perjury." *Id.* Rather, they merely highlighted that a discrepancy existed. Consequently, viewed in isolation or in combination with the previous allegations of prosecutorial misconduct, we conclude that any misconduct here was either cured or harmless beyond a reasonable doubt.

B.     Closing Arguments

¶40     Davis contends that several of the prosecutor's statements in closing constituted prosecutorial misconduct. But Davis did not raise a timely objection to some of these statements. We "generally will not examine the State's closing argument if the defendant failed to timely object to it." *State v. Nelson-Waggoner*, 2004 UT 29, ¶ 30, 94 P.3d 186. And we are hesitant to "require a trial judge to intervene in closing argument whenever the judge believes a misstatement of the evidence by counsel has occurred." *State v. Palmer*, 860 P.2d 339, 344 (Utah Ct. App. 1993). Moreover, "[t]he failure of defense counsel to object to statements made by a prosecutor during the closing is a matter to which we attach significance." *Commonwealth v. Leach*, 901 N.E.2d 708, 717 (Mass. App. Ct. 2009). "In the vast majority of instances, failure to object to such a misstatement will be deemed a waiver of the error." *Palmer*, 860 P.2d at 344.

¶41     Nevertheless, we may review prosecutorial misconduct for plain error. *See State v. Ross*, 2007 UT 89, ¶ 53, 174 P.3d 628. Where a comment by a prosecutor in closing draws no objection, then, the question before us is whether it was "plain error for the trial court not to have intervened." *Id.* ¶ 58.

1.     Reasonable Doubt Standard

¶42     Davis asserts that the prosecutor misstated the reasonable doubt standard. During her closing rebuttal argument, the prosecutor stated, "What is reasonable doubt? . . . It's not beyond a shadow of a doubt. . . . So when you go back there and you say, I know he did it, but—no, no, no. Once you say, I know he did it, you're firmly convinced." Davis suggests that this comment "told the jury that rather than assessing whether the State had proved each element beyond a reasonable doubt, it could convict if it instinctively or intuitively knew that the defendant had committed the crime."

¶43   Misstating the reasonable doubt standard can be prosecutorial misconduct. *State v. Dunn*, 850 P.2d 1201, 1223–24 (Utah 1993). However, curative jury instructions may render the misstatement harmless. *Id.* at 1224–25.

¶44   Here, the prosecutor's statement elicited an immediate objection from defense counsel. The court responded that it would "direct the jury to look at the instruction." The prosecutor also asked the jury to "[p]lease look at that instruction." Instruction 41, unchallenged at trial or on appeal, states that the reasonable doubt standard "does not require proof that overcomes every possible doubt." It instructs the jury that "If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crimes charged, you must find the defendant guilty."[4]

¶45   We conclude that to the extent the prosecutor's statement of the reasonable doubt standard was erroneous, any prejudicial effect was neutralized by the judge's direction to the jury, echoed by the prosecutor, to follow the reasonable doubt instruction. *See Dunn*, 850 P.2d at 1225.

2.      Prosecutor's Previous Experience

¶46   Davis next contends that the prosecutor improperly discussed what other defendants typically claim. Davis argues that this statement was based on information that was not admitted into evidence and that this discussion was "irrelevant and unduly prejudicial since anecdotal statistical evidence as to what defendants usually do has no bearing on whether this particular defendant did the same thing."

---

4. Instruction 41 is a standardized instruction prepared by the Federal Judicial Center and expressly authorized by the Utah Supreme Court. *See State v. Reyes*, 2005 UT 33, ¶¶ 37–38, 116 P.3d 305. It has also "enjoyed a positive reception," *id.* ¶ 38 & n.2, following its quotation and advocation by Justice Ruth Bader Ginsburg, *Victor v. Nebraska*, 511 U.S. 1, 26–27 (1994) (Ginsburg, J., concurring in part and concurring in the judgment).

¶47    In closing, the prosecutor stated that she "ha[d] yet to see a defendant in a case of this nature who concedes the issue of consent." The statement drew no objection. Accordingly, the question before us is whether it was "plain error for the trial court not to have intervened." *See State v. Ross*, 2007 UT 89, ¶ 58, 174 P.3d 628.

¶48    The State admits that "the prosecutor's experience in other cases was not a fact in evidence." However, the State argues that, read in context, the prosecutor's statement was innocuous because it "did not refer to the kind of extra-record experience that might improperly sway the jury's verdict." Indeed, the transcript strongly suggests that the prosecutor was explaining why the next topic in her closing argument was lack of consent:

> In my experience doing these cases, I have yet to see a defendant in a case of this nature who concedes the issue of consent. That is an issue that comes up in a case like this. So what do we have to do? We have to look at the evidence. . . . Now, you get to judge that evidence, and . . . you've been given an instruction earlier that you'll have in your packet that talks about what to consider in evaluating.

The prosecutor then went on to remind the jury of the evidence introduced at trial that tended to support the State's claim that C.D. had not consented.

¶49    The prosecutor did not use her statement about her experience to bolster the State's argument on any issue before the jury or as evidence of what defendants usually do. Like the statement, "[I]t's rare that you get a murder with eyewitnesses"—found unobjectionable in *State v. Cummins*, 839 P.2d 848, 854 n.12 (Utah Ct. App. 1992)—the prosecutor's statement here was "a self-evident proposition well within the common understanding of

lay jurors." *Id.*[5] And, after the statement, she reminded the jury that their decision must be based on the evidence introduced at trial.

¶50   In sum, Davis has not demonstrated that the prosecutor's comment was so likely to prejudice the jury that it was "plain error for the trial court not to have intervened." *State v. Ross*, 2007 UT 89, ¶ 58, 174 P.3d 628. We also do not ascribe any prejudicial effect to the challenged comment.

3.   Burden-Shifting

¶51   Davis also contends that the prosecutor's closing argument was improper because "she . . . suggest[ed that Davis] was guilty because he had not established a reason for [C.D.] to lie, thereby giving the false impression that the jury must convict if [Davis] had not established a reason for [C.D.] to falsely accuse him."

¶52   Here, Davis contends that the prosecutor misstated the law when she argued in closing that the defense had offered no reason for C.D. to have concocted the criminal accusations:

> People don't just wake up in the morning and say rape. We don't do that. He's right. While he doesn't have to show a motive or anything of that nature, it's common sense. You just have to have a reason. Did you hear anything about any reason for [C.D.] to make this up? Nothing was offered. Nothing was offered. Nothing was in evidence. Wild speculations that were just reiterated without any support, without any background. She wasn't even asked about that motive.

---

5. Convictions for object rape and forcible sodomy both require that the victim did not consent. *See* Utah Code Ann. §§ 76-5-402.2, -403(2) (LexisNexis 2012). That defendants on trial for these crimes rarely concede the issue of consent likely falls "within the general realm of human experience and common sense." *See State v. Pearson*, 943 P.2d 1347, 1353 (Utah 1997).

Later in the prosecutor's closing argument, she suggested that Davis could not find a motive for C.D. to falsely accuse him and that "[h]e doesn't have anything in light of all the things [the prosecutors] have." Davis argues that the aggregate effect of these comments was to shift to Davis the burden of proof on the issue of consent.

¶53    Although Davis sought a mistrial based on another statement of the prosecutor, this statement drew no objection at trial. Accordingly, the question before us is whether it was "plain error for the trial court not to have intervened." *Ross*, 2007 UT 89, ¶ 58. An error is not obvious—and thus ordinarily not plain—if "there is no settled appellate law to guide the trial court." *State v. Ross*, 951 P.2d 236, 239 (Utah Ct. App. 1997).

¶54    Claims that the prosecutor's argument shifted the burden of proof rarely succeed.[6] In support of his claim, Davis relies on one Utah case, *State v. Haston* (*Haston I*), 811 P.2d 929 (Utah Ct. App. 1991), *rev'd*, 846 P.2d 1276 (Utah 1993) (per curiam). In that opinion, we affirmed the defendant's conviction and held that there was no reasonable likelihood that the jurors were influenced by a

---

6. *See, e.g., State v. Maestas*, 2012 UT 46, ¶ 168, 299 P.3d 892 (rejecting a claim that the prosecutor's assertion that the defendant could have commissioned an independent DNA test shifted the burden of proof); *State v. Tabesh*, 2005 UT App 353U, para. 8 (per curiam) (rejecting a claim that the prosecutor's implication that the defendant could have supplied additional receipts shifted the burden of proof); *State v. Tilt*, 2004 UT App 395, ¶¶ 17 n.2, 18, 101 P.3d 838 (rejecting a claim that the prosecutor's statement that "there was no explanation as to how" a child's death could have been an accident shifted the burden of proof); *State v. Spinks*, 2003 UT App 182U, para. 7 (rejecting a claim that the prosecutor's assertion that the defendant had not adduced sufficient evidence to support his defense theory shifted the burden of proof); *State v. Bowman*, 945 P.2d 153, 157 (Utah Ct. App. 1997) (rejecting a claim that the prosecutor's comment on the defendant's failure to call a supposedly key witness shifted the burden of proof).

prosecutor's legally incorrect assertion that a voluntary intoxication defense did not apply to attempted depraved indifference murder. *Id.* at 934–45. We also recognized the indubitable rule that "[t]he burden remains on the state throughout the trial to prove each element of the charged offense beyond a reasonable doubt. At no point does any segment of that burden shift to the defendant." *Id.* at 934. However, the Utah Supreme Court reversed our decision and vacated the defendant's conviction on the ground that Utah does not recognize the crime of attempted depraved indifference murder. *See State v. Haston* (*Haston II*), 846 P.2d 1276, 1277 (Utah 1993) (per curiam) (citing *State v. Vigil*, 842 P.2d 843 (Utah 1992)). We see nothing in either *Haston I* or *Haston II* to suggest that the trial court here should have intervened to declare a mistrial based on the argument now raised on appeal.

¶55 "In the criminal justice system, a defendant is presumed innocent and the prosecution must prove guilt beyond a reasonable doubt." *State v. Maestas*, 2012 UT 46, ¶ 167, 299 P.3d 892 (citations omitted). "But it is not improper for the prosecution to argue the case based on the total picture shown by the evidence *or the lack thereof* or to fully discuss from [its] perspective[] the evidence and all inferences and deductions it supports." *Id.* (emphasis added; other alterations in original) (citation and internal quotation marks omitted). "Thus, in determining whether the prosecution's comments improperly shifted the burden of proof to a defendant, we must assess the comment in context of the arguments advanced by both sides as well as in context of all the evidence." *Id.* (citation and internal quotation marks omitted). A prosecutor's remark that was "prompted by" a defendant's claim or that "simply countered the defendant's arguments" does not shift the burden of proof. *Id.* ¶ 168.

¶56 In addition, so long as the prosecutor makes no remarks that "can fairly be characterized as an overt reference to a defendant's failure to testify," the prosecutor is "free to highlight an overall shortfall of defense evidence." *State v. Nelson-Waggoner*, 2004 UT 29, ¶¶ 31, 33, 94 P.3d 186. Thus, statements such as "[N]o one has told you where the defendant was or what he was doing on the

17th," and "[T]he defendant's brother and his two good friends took the stand, they were here available, and not once did they dispute [the State's] evidence" are permissible. *Id.* ¶ 32 (ellipses and internal quotation marks omitted).

¶57     Indeed, we have approved statements virtually identical to those at issue here against a challenge that they constituted a comment on the defendant's silence. *See State v. Nguyen*, 2011 UT App 2, ¶ 28, 246 P.3d 535, (rejecting a challenge to the prosecutor's comments including, "Not a single motivation has been raised to show why she would possibly lie in these circumstances"; "There is the complete absence of any evidence of coaching"; and "[There is a c]omplete lack of any evidence of any motivation to lie in this case"), *aff'd* 2012 UT 80, 293 P.2d 236.

¶58     Here, the prosecutor's comments responded directly to testimony given by Davis under cross-examination. He agreed that he had called his family and asked them to drive by C.D.'s house and get a picture of another man's car in order to demonstrate a motive because he "was still trying to figure out why [she] would accuse [him] of rape." The prosecutor's statement—"Did you hear anything about any reason for [C.D.] to make this up? Nothing was offered. Nothing was offered. Nothing was in evidence"—responded to this testimony. We conclude that the purpose and effect of the challenged comments was merely to stress the paucity of evidence to support a defense theory, not to shift the burden of persuasion onto the defense. Accordingly, the trial court did not commit plain error by not intervening.

4.      Inference of a False Defense

¶59     Davis further asserts that the prosecutor's closing argument denigrated the defense by suggesting that Davis "was making up a defense because he had nothing else to work with." Specifically, he objects to the prosecutor's characterization of his thoughts as, "I don't know of a guy that she's seeing, cause there hasn't been one. But let me just see if I can get lucky, because I have got to get a defense going. I've got nothing."

¶60    Again, the statement challenged on appeal drew no objection at trial, restricting our analysis to a plain error review; i.e., whether it was "plain error for the trial court not to have intervened." *State v. Ross*, 2007 UT 89, ¶ 58, 174 P.3d 628. Our first question, then, is whether there was "settled appellate law to guide the trial court." *State v. Ross*, 951 P.2d 236, 239 (Utah Ct. App. 1997). An appellant "must show that the law governing the error was clear at the time the alleged error was made." *State v. Dean*, 2004 UT 63, ¶ 16, 95 P.3d 276.

¶61    Davis does not cite any Utah rule specifically addressing the extent to which a prosecutor may imply that a defense is made up.[7] Instead, he relies primarily on cases from other states. *See State v. Elnicki*, 105 P.3d 1222, 1233 (Kan. 2005) (stating that it was error for a prosecutor to refer to a defendant's statements using "terms such as 'yarn,' 'fairy tale,' 'fabrication,' 'tall tale,' and 'spin'"); *State v. Hoppe*, 641 N.W.2d 315, 320–21 (Minn. Ct. App. 2002) (noting that a "prosecutor may specifically argue that there was no merit to the defense," but is "not allowed to belittle the defense" (citation and internal quotation marks omitted)); *People v. Nunez*, 426 N.Y.S.2d 2, 4 (App. Div. 1980) (reversing a conviction on the grounds that the defendant was cross-examined about her post-arrest silence and explaining that this error was "exacerbated" by the prosecutor's closing argument, which stated that "the defense was 'a lie,' 'made up,' [and] 'cooked up'").

¶62    Here, the prosecutor's comment was not so direct or inflammatory as to fall within the purview of these cases or relevant Utah precedents. *See, e.g., State v. Cummins*, 839 P.2d 848 (Utah 1992); *State v. Campos*, 2013 UT App 213, 309 P.3d 1160, 2013 WL 4632534. Accordingly, no plain error occurred.

---

7. He does cite several Utah cases for more general propositions. *State v. Todd* reiterated that a prosecutor may not invoke the passions of the jury or refer to matters not in evidence. 2007 UT App 349, ¶¶ 19–24, 173 P.3d 170. *State v. Havatone* likewise dealt with reference to matters not in evidence. 2008 UT 133, ¶ 16, 183 P.3d 257.

II. Evidentiary Error

¶63     Davis next contends that the trial court admitted irrelevant and prejudicial evidence. Specifically, Davis points to evidence regarding a protective order and precautionary measures taken by C.D.'s workplace in response to the protective order. He argues that this "evidence was irrelevant and unduly prejudicial in violation of" rules 402 and 403 of the Utah Rules of Evidence. Davis further argues that none "of the conditions which allow admission under Utah Rule of Evidence 404(b) [were] present."

¶64     The trial court allowed, for a limited purpose, testimony by C.D.'s supervisor (Supervisor) that C.D. informed Supervisor of a protective order C.D. had obtained against Davis:

> [Prosecutor:] You testified that she did come and give you a protect—you said something about a protective order? What do you mean?
>
> [Supervisor:] She filed—
>
> [Defense counsel:] Objection, relevance.
>
> [Prosecutor:] Your Honor, the relevance is that employment—the safety precautions pursuant to that protective order meaning they took it seriously, and she should be able to—
>
> The Court: For that limited purpose, I will overrule the objection, but I don't want to hear any more about it.
>
> [Prosecutor:] Okay. What happened?
>
> [Supervisor:] She presented me with a protective order against [Davis].

The prosecutor then attempted to follow up with a question about what Supervisor did in response to receiving the protective order. Defense counsel objected and the court sustained the objection, summarizing the admitted testimony as, "She received a protective order, and it was presented to her employment . . . period." The prosecutor then asked "what safety precautions the workplace took." Supervisor described these precautions in detail before the court interrupted to limit her response to the general fact that precautions were taken:

> [Supervisor:] I contacted my director and legal counsel for the [workplace] and asked them what I could do to protect [the workplace]. So we did a—received pictures of [Davis] so that my front desk staff would know if he entered the building. They were to push the panic button which rings directly to the police station [nearby] if he were to enter the building. We also talked to all staff that rotate through my front desk to make sure that—
>
> The Court: Okay. We're going further than the Court's going to allow. . . . We can indicate that they received a copy of the protective order and they took precautions.

A.     Protective Order

¶65     Davis first challenges admission of Supervisor's statement, "She presented me with a protective order against [Davis]." He argues that this testimony was admitted in violation of rules 402, 403, and 404(b) of the Utah Rules of Evidence.

1.     Rule 402

¶66     Irrelevant evidence is inadmissible. Utah R. Evid. 402. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

evidence. *Id.* R. 401. "In other words, even evidence that is only slightly probative in value is relevant." *State v. Martin*, 2002 UT 34, ¶ 31, 44 P.3d 805. Thus, "the standard for determining the relevancy of evidence is very low, and even evidence with the slightest probative value is relevant." *Id.* ¶ 34 (citations and internal quotation marks omitted).

¶67    "A trial court has broad discretion in deciding whether evidence is relevant, and we review a trial court's relevance determination for abuse of discretion." *State v. Fedorowicz*, 2002 UT 67, ¶ 32, 52 P.3d 1194. "We will find that a trial court has abused its discretion only if the trial court's decision was beyond the limits of reasonability." *State v. Arguelles*, 2003 UT 1, ¶ 101, 63 P.3d 731 (citation and internal quotation marks omitted).

¶68    Davis maintains that the "fact [that C.D.] had obtained a protective order did not make it any more or less likely that [she] had consented to the sexual activity at issue." The State responds that "evidence that [C.D.] obtained a protective order after the sexual encounter tended to show that she now feared [Davis] because the encounter was not the consensual experience that he described."

¶69    We conclude that it was not beyond the limits of reasonability for the trial court to conclude that the protective order evidence was relevant. The fact that C.D. went to the trouble of obtaining the protective order and was willing to reveal it to her colleagues tends to make C.D.'s account—that the encounter was non-consensual— marginally more probable. Therefore, because the existence and disclosure of the protective order had a "tendency to make a fact [of consequence] more or less probable," Utah R. Evid. 401, the trial court's determination that testimony about C.D. presenting a copy of her protective order to Supervisor was relevant was within the "broad discretion [afforded to the trial court] in deciding whether evidence is relevant," *see Fedorowicz*, 2002 UT 67, ¶ 32.

2.    Rule 403

¶70    Davis next contends that because "any probative value of the evidence was outweighed by its prejudicial effect," the challenged evidence should have been excluded under rule 403 of the Utah Rules of Evidence. Davis argues that evidence of the protective order was prejudicial because it was "likely to rouse the jury to overmastering hostility since it depicted [Davis] as a dangerous and violent person whose presence would require police intervention, while also painting [C.D.] as an abused victim who was being sought out by a dangerous and violent [Davis], and someone who needed police protection."

¶71    Relevant evidence may be excluded under rule 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Utah R. Evid. 403. "Evidence is unfairly prejudicial 'only when it poses a danger of rousing the jury to overmastering hostility.'" *State v. Maestas*, 2012 UT 46, ¶ 138, 299 P.3d 892 (brackets omitted) (quoting *State v. Killpack*, 2008 UT 49, ¶ 53, 191 P.3d 17).

¶72    Davis objected below only on relevance grounds, signaling his view that the evidence lacked any probative value. But rule 403 expressly permits the trial court to exclude relevant evidence. *See* Utah R. Evid. 403. Accordingly, a relevance objection does not preserve a claim that the evidence, even if relevant, should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice. We therefore review this challenge under the plain error standard, which Davis argues in the alternative. *See State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993). Consequently, the question before us is whether it was "plain error for the trial court not to have intervened," *State v. Ross*, 2007 UT 89, ¶ 58, 174 P.3d 628, and not to have sua sponte conducted a rule 403 analysis.

¶73    For reasons explained below in connection with the precautionary measures testimony, which we agree was erroneously admitted, *see infra* ¶ 79, we conclude that Supervisor's

mention of the protective order was not so inflammatory as to require the trial court to sua sponte conduct a rule 403 weighing and further to rule that the danger of unfair prejudice substantially outweighed the testimony's probative value. Moreover, for the reasons explained below in connection with the testimony concerning precautionary measures, *see infra* ¶¶ 77–84, even if admission of the reference to the protective order was erroneous, "'we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings.'" *State v. Hamilton*, 827 P.3d 232, 240 (Utah 1992) (quoting *State v. Verde*, 770 P.2d 116, 120 (Utah 1989)) (holding that even if the evidence's danger of unfair prejudice substantially outweighed its probative value, its admission was harmless).

3.      Rule 404(b)

¶74      Davis further argues that the trial court should have excluded the protective order testimony under rule 404(b) of the Utah Rules of Evidence. He maintains that none "of the conditions which allow admission under [rule] 404(b) [were] present." Rule 404(b) governs the admissibility of evidence of a defendant's other crimes, wrongs, or acts. *Id.* "Rule 404(b) forbids the use of other bad acts to prove the character of the defendant and to show the defendant acted in conformity with his character." *United States v. Gorman*, 312 F.3d 1159, 1162 (10th Cir. 2002) (referring to the analogous federal rule). "'Other bad acts' means acts that are not part of the events giving rise to the present charges." *Id.*

¶75      This claim is unpreserved because, at trial, Davis did not raise a rule 404(b) objection to the testimony. Thus, as explained above, the question before us is whether it was "plain error for the trial court not to have intervened," *Ross*, 2007 UT 89, ¶ 58, and not to have sua sponte excluded this evidence on rule 404(b) grounds.

¶76      Nothing in Supervisor's testimony suggested that the protective order arose from "other acts," that is, "acts that [were] not part of the events giving rise to the present charges." *Gorman*, 312 F.3d at 1162. Accordingly, it would not have been obvious to

the trial court that it needed to intervene under rule 404(b). And in any event, we have concluded that admission of the testimony was harmless. Thus, no plain error occurred.

B.     Precautionary Measures

¶77     Davis also challenges admission of Supervisor's description of the precautionary measures taken at C.D.'s workplace in response to her informing Supervisor of the protective order.

¶78     Davis maintains that Supervisor's testimony about the precautionary measures was irrelevant because the fact that C.D.'s "place of work instituted precautions to protect her—did not make it any more or less likely that [she] had consented to the sexual activity at issue." The State responds that "[a]s with evidence of the protective order, the workplace precaution evidence was relevant to show that after the sexual encounter [C.D.] truly feared [Davis and] that the sexual encounter was therefore not consensual."

¶79     We agree with Davis that evidence of the workplace precautionary measures was erroneously admitted. Any possible relevance lay in the fact that Supervisor may have believed C.D.'s story—in other words, it constituted improper bolstering.[8] The trial court seems to have recognized as much when it initially cut off the precautions testimony and limited the testimony to the fact that C.D.'s workplace "received a copy of the protective order and they took precautions." Accordingly, admitting the precautions testimony into evidence over a relevance objection was not within the "broad discretion [afforded to a trial court] in deciding whether

---

8. Jurors may also have inferred that C.D.'s employer had a policy to implement precautionary measures whenever an employee obtained a protective order, whether or not any supervisor believed the order was factually supportable. Indeed, an employer might well take precautions upon receipt of any protective order lest liability attach to inaction. In fact, Supervisor here implemented the measures only after consultation with legal counsel.

evidence is relevant." *State v. Fedorowicz*, 2002 UT 67, ¶ 32, 52 P.3d 1194.

¶80     Despite our conclusion that the testimony concerning precautionary measures was erroneously admitted, we will not overturn a jury verdict "if the admission of the evidence did not reasonably affect the likelihood of a different verdict." *See State v. High*, 2012 UT App 180, ¶ 50, 282 P.3d 1046 (brackets, citation, and internal quotation marks omitted).

¶81     We recognize "that this is not a case where the evidence of guilt was overwhelming." *Id.* Nevertheless, any facts the jury could reasonably have inferred from the existence of the protective order and the ensuing precautions were presented to the jury directly in other testimony. For example, Davis argues that the jury may have inferred from Supervisor's willingness to implement precautionary measures that Davis was "dangerous and violent." But the jury heard C.D.'s own graphic testimony describing forcible sodomy and object rape. In addition, Nurse, who examined C.D., described C.D.'s injuries in detail. She testified that they were unusual, consistent with "a lot of force," and "consistent with her story of the object that was used," because bruises appeared "higher than [an examining nurse] would normally see."[9] C.D. testified that Davis caused those injuries. The police officer who escorted C.D. to the hospital testified that he did so "because she was afraid," and one of the two police officers who protected C.D. while she was retrieving her belongings testified that "she seemed scared throughout."

¶82     Given the detailed evidence presented that Davis was dangerous and violent, the bolstering effect of the precautions

---

9. Davis maintains that while C.D. "experienced bruises, redness and tenderness, . . . they were consistent with consensual sex." In fact, Nurse testified only that "[y]ou can have consensual sex with injury." She was not asked whether C.D.'s injuries in particular were consistent with consensual sex. Davis points to no other evidence in the record to support his argument.

testimony was not prejudicial. Moreover, "[w]hen Utah appellate courts reverse for improper bolstering, they usually do so not only where a case hinges on an alleged victim's credibility and there is no physical evidence, but also where the bolstering was done by an expert witness." *State v. King*, 2010 UT App 396, ¶ 46, 248 P.3d 984 (citation omitted). Here, as noted above, the State presented physical evidence and the bolstering was not done by an expert witness. The jury had no reason to think that Supervisor had any special expertise in judging credibility.

¶83    In addition, the State did not refer to the precautions testimony in closing, and the improper evidence is confined to ten lines of testimony over a three-day trial consuming over 500 transcript pages. *See High*, 2012 UT App 180, ¶ 53 (stating that our confidence in a jury's verdict was not undermined where improper evidence was "contained in seventeen lines of testimony over a two-day trial with over 400 pages of transcript").

¶84    In sum, we conclude that admission of the precautionary measures testimony was erroneous but "did not reasonably affect the likelihood of a different verdict." *High*, 2012 UT App 180, ¶ 50 (brackets, citation, and internal quotation marks omitted). Our conclusion that the precautionary measures testimony was erroneously but harmlessly admitted under rule 402 effectively disposes of Davis's challenges to the same evidence under rules 403 and 404(b).

III. Jury Instruction

A.    Adequacy of the Record

¶85    Davis next contends that the "trial court's failure to follow required procedure for responding to jury notes violated constitutional protections and the rules of criminal procedure." He argues that the trial court violated his "right to a record of sufficient completeness to permit proper consideration of [his] claims" when it failed to preserve notes from the jury and the court's responses.

¶86    Rule 17(n) of the Utah Rules of Criminal Procedure specifies that a court must follow one of two courses of action upon receiving a question of law from the jury. The court may "direct that the jury be brought before the court where, in the presence of the defendant and both counsel, the court shall respond to the inquiry or advise the jury that no further instructions shall be given." Utah R. Crim. P. 17(n). "Such response shall be recorded." *Id.* Alternatively, the court has discretion to "respond to the inquiry in writing without having the jury brought before the court, in which case the inquiry and the response thereto shall be entered in the record." *Id.*

¶87    Here, the jury submitted two questions to the trial court during deliberations, and the court chose to respond in writing. Defense counsel objected to one of these responses and, after the jury returned its verdict, made a record of the objection:

> [Defense counsel:] [A]ctually, two questions were asked [by] the jury during their deliberations. The first question we all agreed on the answer that was provided to them by the Court having to do with police reports. The second question had to do with— I believe the question was, if someone files a charge, is the prosecution then obligated to file a case? Something along those lines.
>
> The Court: Yes.
>
> [Defense counsel:] And then . . . there was a telephone conference about it with—or a conference. [Co-counsel] and I participated in that conference via telephone. [The prosecutors] were present in your office when that occurred. We objected to the answer that was provided to the jury, and it went into the jury room . . . . [I]t would have been our suggestion that basically they just . . . review their jury instructions, along those lines.

Although the trial court indicated that it would preserve the questions and responses, it apparently did not do so. Davis's appellate counsel filed a motion to supplement the record with the notes and responses. But a clerk for the trial court responded that the court did "not have those requested items" and that the "Judge's Notes are confidential and are not a part of the record."

¶88    "Due process 'requires that there be a record adequate to review specific claims of error already raised.'" *West Valley City v. Roberts*, 1999 UT App 358, ¶ 11, 993 P.2d 252 (quoting *State v. Russell*, 917 P.2d 557, 559 (Utah Ct. App. 1996)). Moreover, rule 17(n) of the Utah Rules of Appellate Procedure explicitly states that when the court responds to a jury inquiry "in writing without having the jury brought before the court," the court's response "shall be entered in the record." Utah R. Crim. P. 17(n). Accordingly, the trial court erred in not entering the note into the record.

¶89    However, applicable rules also dictate how to proceed "[i]f no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable." Utah R. App. P. 11(g). For example, "[i]f anything material to either party is omitted from the record by error or accident or is misstated, the parties by stipulation, the trial court, or the appellate court, either before or after the record is transmitted, may direct that the omission or misstatement be corrected and if necessary that a supplemental record be certified and transmitted." *Id.* R. 11(h). Rule 11(h) "provides a reliable method for the reconstruction of events when the record has failed in some limited respect." *Olsen v. Park-Craig-Olsen, Inc.*, 815 P.2d 1356, 1359 (Utah Ct. App. 1991).

¶90    Consequently, "lack of an adequate record constitutes a basis for remand and a new hearing only where: (1) the absence or incompleteness of the record prejudices the appellant; (2) the record cannot be satisfactorily reconstructed (i.e., by affidavits or other documentary evidence); and, (3) the appellant timely requests the relevant portion of the record." *Roberts*, 1999 UT App 358, ¶ 11 (emphasis omitted).

¶91    Here, Davis asserts that he "moved to supplement the record with the notes from the jury, the judge's response, and a transcript of the telephone call regarding the notes, but none of those had been preserved below." The State responds that merely requesting that the note be added to the record is not enough; Davis must show that the record cannot be satisfactorily reconstructed by affidavits or other means. *See id.* Davis counters that imposing this burden on him "would make the mandatory requirement of Rule 17(n) meaningless."

¶92    The rules are clear on this point. Rule 17(n) requires the trial court to enter into the record its response to a jury inquiry. Utah R. Crim. P. 17(n). But rule 11(h) of the Utah Rules of Appellate Procedure provides a mechanism for a party to reconstruct the record, if possible, if anything material "is omitted from the record by error or accident," as was the case here. This approach is consistent with our statement in *West Valley City v. Roberts* that "lack of an adequate record constitutes a basis for remand and a new hearing only where . . . the record cannot be satisfactorily reconstructed." 1999 UT App 358, ¶ 11, 993 P.2d 252. And the statement in *Roberts* is in keeping with the general rule that "[a]ppellants bear the burden of proof with respect to their appeals, including the burdens attending the preservation and presentation of the record." *State v. Litherland*, 2000 UT 76, ¶ 17, 12 P.3d 92.

¶93    Davis contends that *Roberts* supports his position. In that case, West Valley City's own ordinances required it to record an administrative hearing, but the recording device malfunctioned. *Roberts*, 1999 UT App 358, ¶ 9. Consequently, this court concluded that the "complete absence of a record" prevented meaningful appellate review and thus violated the appellant's due process rights. *Id.* ¶¶ 13, 14.

¶94    Our supreme court has noted that "the almost complete absence of a trial transcript makes appellate review impossible because it precludes a meaningful review of the lower court's

decision." *State v. Verikokides*, 925 P.2d 1255, 1256 (Utah 1996). That was the situation in *Roberts*. But unlike *Roberts*, the present case does not involve the almost complete absence of a record of trial, but rather the absence of two notes.[10]

¶95    We therefore follow the general rule that "lack of an adequate record constitutes a basis for remand and a new hearing only where . . . the record cannot be satisfactorily reconstructed." *See Roberts*, 1999 UT App 358, ¶ 11. Davis has not demonstrated or asserted that the record cannot be satisfactorily reconstructed. Consequently, the lack of an adequate record in this case does not constitute a basis for remand and a new hearing.[11] Our review of Davis's claim challenging the court's supplemental jury instruction will proceed on the existing record on appeal.[12]

---

10. Davis also relies on *State v. Tolano*, 2001 UT App 37, 19 P.3d 400. There, we stated in dicta and with little analysis that a misplaced jury note would render a record inadequate for review in violation of the appellant's due process rights. *Id.* ¶ 1 n.1. We do not read the *Tolano* footnote as intending to depart from the well-established procedures described above.

11. In addition, we note that an appellant's "failure to ensure that his objections were recorded at trial and his failure to reconstruct the record under rule 11 precludes any finding of a due process violation under the circumstances." *State v. Prawitt*, 2011 UT App 261, ¶ 8, 262 P.3d 1203 (citing *State v. Johnson*, 2006 UT App 3, ¶ 13, 129 P.3d 282; *West Valley City v. Roberts*, 1999 UT App 358, ¶ 11, 993 P.2d 252).

12. We do not agree with the State that, without reconstruction, the record is inadequate to review Davis's claim and we must "assume the regularity of the proceedings below." *State v. Blubaugh*, 904 P.2d 688, 699 (Utah Ct. App. 1995). The record does reflect the gist of the judge's response to the jury, and Davis is entitled to argue the merits of his claim based on the record as it stands.

B.     Prejudice

¶96    Davis argues that insofar as the general tenor of the trial court's response to the jury question may be determined from the record made, the response constituted an improper comment on the strength of the State's case. Specifically, he asserts—and we agree—that the record fairly suggests the court's response. In making a record of his objection, defense counsel paraphrased the jury's question as, "[I]f someone files a charge, is the prosecution then obligated to file a case? Something along those lines." The trial court agreed with that characterization. Counsel then stated that he would have preferred a limited response telling the jury to "review their jury instructions." We infer from this exchange that the court's supplemental instruction informed the jury that the prosecution is not obligated to file a criminal case every time someone claims to be the victim of a crime.

¶97    The trial court is to "instruct the jury on the law if the instruction will assist the jurors in comprehending the case." Utah R. Crim. P. 19(b). "The court shall not comment on the evidence in the case, and if the court refers to any of the evidence, it shall instruct the jury that they are the exclusive judges of all questions of fact." *Id.* R. 19(f); *see also State v. Green*, 6 P.2d 177, 181 (Utah 1931) (noting that a trial court "is not permitted to comment on the evidence, much less may [it] indicate to the jury that some material facts, not admitted at the trial, are established beyond controversy"). This is because "[i]t is the sole and exclusive province of the jury to determine the facts in all criminal cases, whether the evidence offered by the State is weak or strong, is in conflict or is not controverted." *Green*, 6 P.2d at 181; *see also State v. Taylor*, 2005 UT 40, ¶ 22, 116 P.3d 360 (same).

¶98    Nevertheless, "[a]ny error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." Utah R. Crim. P. 30(a); *see also State v. Johnson*, 771 P.2d 1071, 1073 (Utah 1989) (holding that a trial court's erroneous mention of a non-existent second charged offense to a jury was harmless error because there was no indication that the jury

considered it); *State v. Ingleby*, 2004 UT App 447, ¶ 13, 104 P.3d 657 (holding that a trial court's description of an issue raised by jury question as "peripheral" was harmless in light of a jury instruction to "disregard any statement that the court may have made that could be construed as favoring one side or the other").

¶99 Davis argues here that "[t]he trial court's response informing the jury that the State is not required to file all cases characterized the evidence, bolstered the State's case, and gave added weight to [C.D.'s] credibility." "The response told the jury that the State believed [C.D.] since it was not required to file charges," Davis asserts, "thereby suggesting that [C.D.] was credible and that the State might have other information." Davis does not further elaborate on the potential harm he believes the instruction may have caused.

¶100 Assuming without deciding that the judge's comment was improper, Davis has not demonstrated any resulting prejudice. The instruction did little more than to acknowledge a commonplace feature of our justice system well known to any consumer of local news. Although at least one juror was apparently unaware of this practice, it is no secret in our society that the decision of whether to charge a crime lies with the prosecutor, not the complainant. Consequently, declining to answer the jury's question would apparently have left at least one juror with the false impression that prosecutors lack discretion to decline prosecutions.

¶101 The fact that the information was communicated in response to a juror's question about the operation of our criminal justice system also mitigated any possible prejudicial effect. This issue would take on quite a different cast had the prosecutor in closing stated, "You know, a lot of women report having been the victims of domestic violence. Sometimes we prosecute, sometimes we don't. But when we heard this woman's story, we knew we had to prosecute." Such a statement might well be viewed as a prosecutor vouching for the credibility of the victim.

¶102   A prosecutor must avoid "'vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused.'" *State v. Hopkins*, 782 P.2d 475, 479–80 (Utah 1989) (quoting *United States v. Young*, 470 U.S. 1, 18 (1985)). "'[S]uch comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury . . . .'" *Id.* (quoting *Young*, 470 U.S. at 18). Moreover, "'the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.'" *Id.* (quoting *Young*, 470 U.S. at 18–19). Thus, such comments are improper when "the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility." *State v. Carter*, 776 P.2d 886, 892 (Utah 1989) (citation and internal quotation marks omitted).

¶103   This did not happen here. Nothing in the record before us indicates that the supplemental instruction suggested either the existence of extra-record evidence or that the prosecutor's decision to charge the defendant was based on a personal belief in defendant's guilt rather than an assessment that the evidence rose to a level requiring that a jury should determine the defendant's guilt.

¶104   Finally, jury instructions must be read and evaluated as a whole. *State v. Johnson*, 774 P.2d 1141, 1146 (Utah 1989). And "if taken as a whole they fairly instruct the jury on the law applicable to the case, the fact that one of the instructions, standing alone, is not as accurate as it might have been is not reversible error." *State v. Lucero*, 866 P.2d 1, 3 (Utah Ct. App. 1993) (citing *State v. Brooks*, 638 P.2d 537, 542 (Utah 1981)). Here, the trial judge instructed the jury, "[N]either the lawyers nor I actually decide the case, because that is your role. Don't be influenced by what you think our personal opinions are; rather, you decide the case based upon the law explained in these instructions and the evidence presented in court."

¶105   In sum, Davis has not demonstrated that the supplemental instruction created a reasonable likelihood of a different result.

## IV. Cumulative Error

¶106   Davis contends that the errors he identifies are alone sufficient to require reversal, "but even if they [are] not, the errors worked together in a way that undermined the fairness of the proceeding, requiring reversal." "Under the cumulative error doctrine, we will reverse only if the cumulative effect of the several errors undermines our confidence that a fair trial was had." *State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993) (citations, ellipsis, and internal quotation marks omitted).

¶107   In this opinion, we have determined that the trial court committed several errors, although we have concluded that no error alone was sufficiently prejudicial to require reversal. After considering the limited prejudicial effect of these errors and the relative strength of the case against Davis, our confidence in the fairness of the trial has not been undermined. *See State v. Havatone*, 2008 UT App 133, ¶¶ 8, 17, 183 P.3d 257 (reversing when errors that were not individually prejudicial were combined and considered in light of the weakness of the evidence supporting the conviction, because our confidence that defendant received a fair trial was undermined). Here, the jury was presented with a relatively strong case against Davis, including photographic evidence of injuries, testimony from numerous lay and expert witnesses, and C.D.'s detailed testimony. In addition, Davis demonstrated no motive for C.D. to fabricate her account. Therefore, despite several errors, our confidence in the fairness of the trial is not undermined and we decline to reverse under the cumulative error doctrine.

CONCLUSION

¶108 The prosecutor's sarcasm, while inappropriate, was harmless beyond a reasonable doubt. Her questions about Davis's veracity did not draw the jury's attention to any matter it was not entitled to consider and, in any event, were harmless beyond a reasonable doubt. Likewise, although improper, the prosecutor's question asking Davis to comment on the veracity of another witness did not result in prejudice. The prosecutor's misstatement of the standard of proof during closing was harmless beyond a reasonable doubt in light of the written jury instructions and the trial court's directive that the jury rely on the written instructions. The balance of the prosecutor's closing argument did not improperly reference her experience, prejudice Davis by shifting the burden of proof or improperly suggest that the defense theories were false. Therefore, those statements which did constitute prosecutorial misconduct were harmless beyond a reasonable doubt.

¶109 Although evidence of the precautions taken by C.D.'s workplace constituted improper bolstering, admission of that evidence did not prejudice the outcome of the trial. Further, Davis has not carried his burden of showing that the content of the challenged supplemental jury instruction prejudiced him. We therefore decline to reverse on these grounds.

¶110 Despite the errors that occurred during the course of the trial, we decline to reverse under the cumulative error doctrine because our confidence that Davis received a fair trial is not undermined.[13]

---

13. We have addressed Davis's principal contentions on appeal. To the extent that we have not addressed other points or subpoints raised or suggested by Davis, we have determined that they are foreclosed by the foregoing analysis or lack merit. Moreover, they do not contribute significantly to Davis's cumulative error claim.

(continued...)

¶111  Affirmed.

––––––––––

THORNE, Judge (concurring):

¶112  I concur in the majority opinion's ultimate conclusion that Davis's convictions be affirmed, and I largely concur in its analysis of Davis's arguments on appeal. However, I disagree with the majority's assumption that the trial court erred—albeit harmlessly—when it answered the jury's inquiry about the prosecutor's discretion to bring charges against Davis. I see no abuse of discretion in the trial court's handling of the jury's question, and I therefore conclude that the trial court's answer does not constitute error.

¶113  The trial court is granted the discretion to decide how best to handle inquiries on points of law from a deliberating jury. While rule 17(n) of the Utah Rules of Criminal Procedure allows the trial court to either "respond to the inquiry *or* advise the jury that no further instructions shall be given," Utah R. Crim. P. 17(n) (emphasis added), the trial court "may in its discretion respond to the inquiry in writing without having the jury brought before the court." *Id.*[14]

––––––––––

13. (...continued)
Accordingly, we decline to address them further. *See State v. Carter*, 776 P.2d 886, 888 (Utah 1989) ("[T]his court need not analyze and address in writing each and every argument, issue, or claim raised and properly before us on appeal. Rather it is a maxim of appellate review that the nature and extent of an opinion rendered by an appellate court is largely discretionary with that court.").

14. I acknowledge that when the trial court avails itself of the authority to respond to jury inquiries in writing, as it did in this case, it is obligated to place its response into the record. *See* Utah R. Crim. P. 17(n). Even though the record in this case does not, for

(continued...)

¶114  Of course, there are limitations on the trial court's discretion to respond to jury inquiries. Pursuant to rule 19(f) of the Utah Rules of Criminal Procedure, the trial court "shall not comment on the evidence in the case, and if the court refers to any of the evidence, it shall instruct the jury that they are the exclusive judges of all questions of fact." *Id.* R. 19(f); *see State v. Alonzo*, 973 P.2d 975, 980 (Utah 1998) ("[A] court may not comment on the weight of the evidence presented at trial or comment on the merits of the case in such a way that indicates a preference toward either party."). A trial court's response to a jury's inquiry must also accurately state the law. *Cf. State v. Marchet*, 2012 UT App 197, ¶ 17, 284 P.3d 668 ("[J]ury instructions should not incorrectly or misleadingly state the law." (citation and internal quotation marks omitted)).

¶115  Here, the trial court apparently informed the jury, after receiving the jury's inquiry, that the prosecutor was not required to file a criminal case every time someone claims to be the victim of a crime. This response did not comment on the evidence of the case, nor was it an inaccurate statement of law. *See State v. Geer*, 765 P.2d 1, 3 (Utah Ct. App. 1988) ("Prosecutors are given broad discretion in determining whether to prosecute."). Nevertheless, the majority opinion assumes that the trial court's response to the jury inquiry was error. I cannot join in that assumption because it is clear to me that the trial court's response fell within the appropriate range of its discretion.

¶116  The question of prosecutorial decision-making was not directly at issue in this case and is additionally a matter of common knowledge among reasonably informed citizens. However, some dispute on the issue had apparently arisen between the jurors, and they considered it important enough to ask the court for clarification. In my opinion, the trial court acted well within its

---

14. (...continued)
unknown reasons, contain the trial court's response, I am satisfied with the majority opinion's treatment of the record deficiency. *See supra* ¶¶ 85–95.

discretion when it accurately responded to the jury's request for further instruction. *Cf. State v. Couch*, 635 P.2d 89, 95 (Utah 1981) ("The critical fact is that the jury has *signified its lack of understanding* of the meaning of a word it must apply in performing its function." (emphasis added)).

¶117   The Utah Supreme Court's analysis in *State v. Couch* is instructive on this point. In *Couch*, the trial court refused the jury's request that it define a common word that was contained in an element of an offense. The supreme court reversed the defendant's conviction based on the trial court's refusal to provide the requested definition. *See id.* at 93–95. The supreme court explained that "[i]t is normally unnecessary and undesirable for a trial judge to volunteer definitions of terms of common usage for the jury." *Id.* at 94. "Where the jury requests the instruction, however, it is generally held error to refuse to provide a definition, even where the word is a term of common meaning." *Id.*

¶118   Obviously, the tangential information requested in this case is not as critical as the element definition requested in *Couch*. Nevertheless, *Couch* supports the proposition that the trial court may provide even commonly known information to the jury upon the jury's request, and this is true even when it would be inappropriate to so instruct the jury as an initial matter. Further, even though the prosecutorial discretion issue was tangential in this case, the trial court evidently determined that it was better to correctly answer the jury's question than to allow the jury to speculate on the matter or proceed on an incorrect understanding of the law.

¶119   Finally, the modern trend in jury trials is clearly towards empowering jurors to ask questions and otherwise treating jurors like adult participants in the fact-finding process. For example, in 2002, Utah amended its Rules of Criminal Procedure to allow jurors to ask questions of witnesses at criminal trials. *See* Utah R. Crim. P. 17(i) & amend. note (2003). In light of this trend, I believe the trial court should be granted broad discretion to entertain jury requests for information so long as those requests can be answered

accurately and without commenting on the evidence or the relative strength of the parties' cases.

¶120   The trial court's response to the jury's inquiry in this case was accurate and did not constitute a comment on the evidence or the strength or weakness of either party's case. Accordingly, I would hold that the trial court's decision to respect the jury's request for information on prosecutorial charging discretion fell within the boundaries of its discretion and did not constitute error.[15] On this limited point alone, I respectfully disagree with the majority opinion.

_____

15. Although I see no error in the trial court's response to the jury, I agree with the majority opinion's conclusion that Davis has not established any prejudice resulting from that response.